

# NUMBER 13-16-00346-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

FATIH OZCELEBI, M.D.,                                          **Appellant,**

**v.**

K.V. CHOWDARY, M.D.
INDIVIDUALLY AND D/B/A
VALLEY GASTROENTEROLOGY
CLINIC, P.A.; VALLEY
GASTROENTEROLOGY CLINIC
P.A.,                                                 **Appellees.**

## On appeal from the County Court at Law No. 7 of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides**
**Memorandum Opinion by Chief Justice Valdez**

Appellant, Fatih Ozcelebi, M.D., appeals various rulings favoring appellees, K.V.

Chowdary, M.D., individually and doing business as Valley Gastroenterology Clinic, P.A.,

(Dr. Chowdary) and Valley Gastroenterology Clinic, P.A. (VGC).  These rulings include a special exceptions order, two summary judgments, an order striking summary judgment evidence, death penalty sanctions, and a mediation sanction.  By nine issues, Dr. Ozcelebi contends the trial court erred in granting these orders.  We affirm.

## I.    FACTUAL BACKGROUND

Unless otherwise specified, the summary judgment evidence considered by the trial court showed the following.  Dr. Ozcelebi came to the United States from Turkey to attend medical school.  Upon graduation he was required, pursuant to his J-1 exchange visa, to return to Turkey for a period of two years.  Seeking a waiver of this requirement, Dr. Ozcelebi applied and was hired to work with Dr. Chowdary at VGC on the condition that Dr. Ozcelebi provide primary care in medically underserved areas, as required by the J-1 visa waiver.

## A.    Employment Agreement

Dr. Ozcelebi and VGC entered into an employment agreement with a term of three years (Employment Agreement).  The Employment Agreement contained a provision relating to a "profit sharing plan," which stated that "[Dr. Ozcelebi] shall be entitled to participate in [VGC's] profit sharing plan in accordance with its provisions."

The Employment Agreement also contained a non-compete provision.  The non-compete provision stated that if Dr. Ozcelebi were to

> voluntarily terminate [the] [Employment] Agreement and [continue] to practice medicine in Hidalgo and/or Starr Counties, Texas, [Dr. Ozcelebi] shall pay $10,000.00 per month to [VGC] for two years after the effective date of termination [totaling $240,000].

The Employment Agreement also contained a records-provision, which provided as follows:

2

All case records, case histories, X-ray films, or personal and regular files concerning patients of [VGC] or patients consulted, interviewed, or treated and cared for by [Dr. Ozcelebi] shall belong to and remain the property of [VGC]. However, upon termination of this Agreement, [Dr. Ozcelebi] shall have the privilege, within ninety (90) days after termination, of reproducing at his own expense, any of such patient records.

In conjunction with the Employee Agreement, Dr. Ozcelebi also executed an employment affidavit (the "Employment Affidavit"). In the Employment Affidavit, Dr. Ozcelebi agreed to work for a minimum of two years (twenty-four months) at a fixed annual salary. Dr. Ozcelebi also agreed to "devote his full-time energies to a minimum of forty (40) hours of Primary Care per week for VGC" and to "perform these duties in a medically underserved or health professional shortage area." Importantly, Dr. Ozcelebi also agreed to accept certain financial consequences if his employment were to terminate before the second year of his three-year contract term. Specifically, the Affidavit provided that:

> Any non-fulfillment of conditions set forth in the contract between [VGC] and [Dr. Ozcelebi] will be considered a substantial breech [sic] of this agreement by [Dr. Ozcelebi]. If there is such a breech [sic], [VGC] may, at it's [sic] option, terminate this agreement immediately. In addition, it is agreed that [VGC] will be substantially damaged by [Dr. Ozcelebi's] failure to remain at [VGC] in the practice of medicine for a period of twenty-four (24) months and that, considering the precise damages are difficult to calculate, [Dr. Ozcelebi] will agree to pay [VGC] the sum of two hundred and fifty thousand dollars ($250,000) for failure to fulfill [Dr. Ozcelebi's] two-year contract. In addition to liquidated damages, [VGC] will recover from employee, any other consequential damages, and reasonable attorney's fees, due to the failure to provide services to [VGC] for a period of twenty-four (24) months.

The Employment Agreement specifically defined "Termination" of employment as one of the following:

> (a) Whenever [Dr. Ozcelebi] shall cease to be a "licensed person," as defined in the Texas Professional Association Act.

3

(b) Whenever [VGC] and [Dr. Ozcelebi] shall mutually agree to the termination in writing.

(c) The death of [Dr. Ozcelebi].

(d) Whenever [Dr. Ozcelebi] fails or refuses to perform faithfully and diligently the duties of employment and comply with the provisions of this Agreement.

(e) Whenever [Dr. Ozcelebi] fails or refuses to comply with the reasonable policies, standards, and regulations of [VGC].

(f) Notwithstanding any of the provisions of subparagraphs (a) through (e) above, upon sixty (60) days' prior written notice by either [VGC] on or [Dr. Ozcelebi] to the other.

## B.      Early Termination

Dr. Ozcelebi began his employment with VGC in April 1996. Thus, his three-year contract term extended through April 1999. However, by October 1997, approximately a year and a half into the three-year term, the relationship between Dr. Ozcelebi and Dr. Chowdary deteriorated. Dr. Chowdary provided affidavit testimony and supporting evidence chronicling the events leading up to Dr. Ozcelebi's early departure from VGC, the relevant portions of which we describe below.

## 1.      Dr. Chowdary's Summary Judgment Evidence

Dr. Ozcelebi made it clear that he would leave unless VGC agreed to change certain policies. Dr. Chowdary describes the policy disagreements in his affidavit as follows:

> [Dr. Ozcelebi] was an employee, and VGC would not agree to immediately promote him to the Board of Directors. VGC would not agree to stop providing courtesy coverage to sick or hurt gastroenterologists. . . . I advised [Dr. Ozcelebi] that the Board would continue to have discretion under its policies and procedures, and under his contract, to make work or coverage assignments. I would not agree to change the policy in order to provide that I would not have authority over him at VGC. VGC would not give or permit [Dr. Ozcelebi] as its employee to take its confidential and

4

proprietary records, including its medical and billing records, or its patient lists with phone numbers. VGC strictly adhered and adheres to HIPPA, and we would not stop. VGC would not agree to stop helping poor people in Palmview or stop allowing priest(s) there to introduce doctors to their congregations. (No doctor was required to say or participate in any prayers, and that would not change and has not changed). Nor would VGC revoke its policy that each physician should personally conduct the patient history with each of the new patients.

When Dr. Chowdary refused to cede to these demands, Dr. Ozcelebi indicated he intended to leave VGC. Dr. Chowdary stated he expected Dr. Ozcelebi to honor the damage provisions of the Employment Agreement if he left.

Around June 1997, Dr. Ozcelebi hired a lawyer to set up a gastroenterology business called Digestive Disease Specialist (DDS) in Hidalgo County, which he wholly owned. Dr. Ozcelebi leased office space for DDS on a multiyear term, contracted for phone service at the office, opened a bank account in the company's name with checks issued in DDS's name, and printed DDS business cards.

By late September 1997, Dr. Ozcelebi distributed DDS business cards to patrons at a charity event, where it was announced that Dr. Ozcelebi was leaving VGC to start DDS.

In early October 1997, Dr. Chowdary became aware of Dr. Ozcelebi's actions, which he considered to be a voluntary and early "termination" of the of the Employment Agreement, triggering the $250,000 liquidated damages provision and the $240,000 non-compete damages provision. Dr. Ozcelebi refused to pay damages and stated he would rather spend thousands of dollars in attorney's fees to challenge the legality of the Employment Agreement. Dr. Ozcelebi stated he would leave VGC to begin working for DDS, effective October 3. Dr. Ozcelebi cleaned out his office at VGC and removed his personal belongings. Dr. Ozcelebi did not come into the office on October 3. Dr.

5

Chowdary learned from another gastroenterologist that Dr. Ozcelebi began treating patients for DDS as early as October 3. VGC changed the security code for entrance into VGC's office.

Dr. Chowdary later learned that Dr. Ozcelebi secretly recorded their conversations and conversations he had with other VGC employees on the VGC premises. According to Dr. Chowdary, these actions violated VGC's workplace policy, as secret or surreptitious behavior is not allowed and detrimental to morale and to a good workplace environment. Dr. Chowdary asserted these actions also violated federal HIPAA regulations.

On October 6 or 8, Dr. Ozcelebi failed to attend work to perform a previously-scheduled medical procedure on a VGC patient. According to Dr. Chowdary, this unexplained absence provided further confirmation that Dr. Ozcelebi left VGC.

On October 13, around midnight, Dr. Ozcelebi attempted to enter VGC's office using the old code, which triggered the security alarm. At Dr. Chowdary's request, the security company for the building informed Dr. Ozcelebi that he would not be given the new security code to enter and that he was not welcome on the property. When the police responded, Dr. Chowdary reported that Dr. Ozcelebi was trespassing and that his last day of employment had been ten days earlier, on October 3. Nevertheless, Dr. Ozcelebi managed to enter the building to remove documents.

The next day, on October 14, 1997, Dr. Ozcelebi showed up to VGC's office claiming that he was reporting for work. Upon learning of this, Dr. Chowdary asked Dr. Ozcelebi to leave the premises. Dr. Chowdary then left to treat a patient in a room down the hall. Shortly thereafter, Dr. Ozcelebi pounded the door of the patient room, shouted Dr. Chowdary's name, and asked repeatedly whether he had just been fired—all while

6

holding a recording device in his hand to capture the event. Dr. Chowdary did not respond to the question, as he was treating the patient.

According to Dr. Chowdary, Dr. Ozcelebi admitted he took VGC's patient list and telephoned VGC patients to solicit business for DDS without prior authorization. Dr. Ozcelebi further admitted he created a brochure, purportedly sponsored by VGC, which referred patients of VGC to DDS for the "best medical care." At a later deposition, Dr. Ozcelebi referred to the patients as "his" patients and testified that he gave himself permission to take the patient list as an employee of VGC. According to Dr. Chowdary, Dr. Ozcelebi also participated in and attended sessions where he claims other doctors "bad-mouthed" him and that Dr. Ozcelebi failed to defend Dr. Chowdary or VGC's reputation.

In his affidavit, Dr. Chowdary addressed Dr. Ozcelebi's claims that VGC had a profit sharing plan under the Employee Retirement Income Security Act (ERISA) and that he was denied the opportunity to participate in that plan. Dr. Chowdary stated that VGC's profit sharing plan had been discontinued in its entirety before Dr. Ozcelebi was hired in April 1996.

## 2. Dr. Ozcelebi's Summary Judgment Evidence (Excluded)

The trial court excluded Dr. Ozcelebi's summary judgment evidence for reasons addressed later in this opinion. Nevertheless, we set out the excluded evidence for the reader to better understand the nature of Dr. Ozcelebi's complaints on appeal.

Dr. Ozcelebi claimed that Dr. Chowdary assigned him to work in McAllen, an area not considered to be medically underserved, which did not satisfy the requirements of his J-1 visa waiver. Dr. Ozcelebi further claimed that Dr. Chowdary intentionally misled Dr.

7

Ozcelebi to enter into the Employment Agreement thinking he would work in a medically underserved area, constituting fraud. Dr. Ozcelebi asserted that Dr. Chowdary's refusal to address the visa compliance issue led to the souring of their relationship and to his decision to contemplate leaving VGC. Dr. Ozcelebi claimed that, on October 2, he wrote a letter requesting that VGC provide copies of documents relating to its profit sharing plan, but VGC refused his request. Dr. Ozcelebi further claimed that, on October 2, he wrote Dr. Chowdary a letter stating he would not leave VGC, but Dr. Chowdary refused to accept the letter. Dr. Ozcelebi has taken the position throughout this case that he never voluntarily quit VGC; instead, Dr. Chowdary fired him on October 14.

Dr. Ozcelebi admitted that he took steps to open DDS in Hidalgo County, but that it was merely preparatory and DDS never directly competed with VGC while he worked for VGC. Dr. Ozcelebi claimed the records-provision of the Employment Agreement specifically authorized him to retrieve records concerning *his* (as opposed to Dr. Chowdary's) patients, so there was nothing improper about steering his patients on the list to DDS through target advertising.

Dr. Ozcelebi admitted he was absent from work October 6th and 7th. However, he claimed that he previously notified Dr. Chowdary that he would be out of the office for those days. Dr. Ozcelebi claimed that he performed work for VGC October 8th through the 10th, so Dr. Chowdary's assertion that he quit effective October 3rd was unfounded. Dr. Ozcelebi further claimed that he did not work the weekend of October 11th through the 12th because Dr. Chowdary was on-call for that weekend, not because he quit VGC. Dr. Ozcelebi claimed that he reported for work October 13th, but Dr. Chowdary prevented him from seeing patients. Dr. Ozcelebi admitted that he triggered the alarm around

8

midnight on October 13 and that he might have taken some documents from the office that night. According to Dr. Ozcelebi, Dr. Chowdary filed a criminal trespass complaint with the McAllen Police Department following this incident, which led to Dr. Ozcelebi's arrest. Dr. Ozcelebi further claimed the assistant district attorney (ADA) assigned to prosecute the criminal trespass dismissed the case, stating on the motion to dismiss: "further investigation and affidavits obtained indicated that [Dr. Ozcelebi] was still employed at the time criminal charges were filed; [and] the evidence is insufficient to prove the elements of the offense."

Dr. Ozcelebi claimed that, on October 14, he and Dr. Chowdary had a tense verbal exchange at the VGC office and that Dr. Chowdary tried to physically assault him. According to Dr. Ozcelebi, he considered himself officially "fired" on October 14th.

Dr. Ozcelebi's summary judgment evidence showed that VGC paid him up to October 3, but not for work allegedly performed up to October 14th. The alleged nonpayment prompted Dr. Ozcelebi to file a wage-claim with the Texas Workforce Commission (TWC). Dr. Ozcelebi won his wage-claim, as evidenced by the TWC's order requiring VGC to pay Dr. Ozcelebi's wages through October 14th. Specifically, the TWC's order stated:

> On approximately October 1 [], [Dr. Ozcelebi] approached [Dr. Chowdary] concerning severing the employment-relationship. [Dr. Ozcelebi] already leased a new office and was preparing to open it. [Dr. Chowdary] told him that his doing so would violate the employment agreement. [Dr. Chowdary] contends he performed no services for the business after [October 3]. . . .
>
> [Dr. Ozcelebi] has provided documentation and witnesses verifying that he continued to report to the office through [October 14]. He saw patients the week of October 5th through the 9th. He took off for personal reason[s] October 6th and 7th. He was not allowed to see patients at the office on October 13th or 14th, although he reported to the hospital and office those

9

days as scheduled. He did not attempt to perform services for this employer after [October 14]. . . .

CONCLUSIONS: [Dr. Ozcelebi] is entitled to $3,692.28 in gross unpaid wages from his employer under the Texas Payday Law.

According to Dr. Ozcelebi, Dr. Chowdary continued to use and display his name at VGC's office even after he left VGC—action which he contends invaded his privacy.

## II.     PROCEDURAL HISTORY

A lawsuit concerning the above-described events has been pending since 1997. Delay in resolving the matter has been due, in large part, to a complicated and tangled procedural history, which we chronicle below.

### A.     Dr. Chowdary's Lawsuit and Dr. Ozcelebi's Answer and Counterclaims

In 1997, Dr. Chowdary sued Dr. Ozcelebi for damages relating to Dr. Ozcelebi's alleged breach of contract (Employment Agreement) and breach of fiduciary duty.

Dr. Ozcelebi answered by asserting numerous affirmative defenses to Dr. Chowdary's breach of contract claim, including failure of consideration. He also sought equitable relief in the form of rescission of the contract based on fraud. Dr. Ozcelebi's attorney attached an affidavit to the answer, which verified that every statement contained within "Paragraphs 3, 4, 5, 15, 16, 17, 18, 19 [of the answer] are within his personal knowledge and true and correct." Specifically, these paragraphs asserted the following:

> 3.      [Dr. Ozcelebi] specially and specifically denies that [Dr. Chowdary and VGC] "have lived up to all obligations they undertook in the contract," as alleged.
>
> 4.      [Dr. Ozcelebi] specially and specifically denies that [VGC] is the assumed name of [Dr. Chowdary], and therefore specially denies that [Dr. Chowdary] can recover in the capacity in which he has sued.
>
> 5.      [Dr. Ozcelebi] specially and specifically denies that "[a]ll conditions precedent to the maintenance of this action and to recovery on

10

it, including entry of a judgment in favor of [Dr. Chowdary and VGC] and ordering that [Dr. Ozcelebi] take nothing have occurred, have been performed, or have been met," as alleged by [Dr. Chowdary and VGC].

15. [Dr. Ozcelebi], continuing to deny any and all liability, nonetheless affirmatively pleads that [Dr. Chowdary and VGC] cannot recover, due to the failure of consideration and/or lack of consideration with respect to the contract or contracts sued upon.

16. [Dr. Ozcelebi], continuing to deny any and all liability, nonetheless affirmatively pleads that [Dr. Chowdary] lacks standing to sue in an individual capacity on a claim of breach of contract.

17. [Dr. Ozcelebi], continuing to deny any and all liability, nonetheless affirmatively pleads that [VGC] lacks standing to allege a claim of defamation, and cannot sue or recover on such a claim.

18. [Dr. Ozcelebi], continuing to deny any and all liability, nonetheless affirmatively pleads that [Dr. Chowdary] cannot recover in the capacity in which he has sued on a claim of breach of contract, as he was not a party to the contract.

19. [Dr. Ozcelebi], continuing to deny any and all liability, nonetheless affirmatively pleads that the liquidated damages provisions sought to be enforced do not comply with Sections 15.05 and 15.50 of the Business and Commerce Code and constitute an unlawful restraint on trade.

In addition to filing an answer, Dr. Ozcelebi asserted a counterclaim against Dr. Chowdary for violating the Racketeer Influenced and Corrupt Organizations Act (RICO) by fraudulently procuring a J-1 visa waiver. Dr. Ozcelebi further asserted a counterclaim against Dr. Chowdary for violating the Texas Free Enterprise and Anti-Trust Act (FEAT), alleging the $250,000 liquidated damage provision constitutes an unreasonable restraint on trade. Dr. Ozcelebi also asserted a counterclaim against VGC under the Employee Retirement Income Security Act (ERISA). Specifically, Dr. Ozcelebi alleged that VGC is an employer covered by ERISA with a profit sharing plan. Consequently, Dr. Ozcelebi asserted that VGC was required by section 1132 of the United States Code to provide

11

copies of plan documents within thirty days of request by a plan participant and that VGC refused to abide his October 2 request to see certain plan documents. Dr. Ozcelebi asserted that, because of this stonewalling, he was entitled to statutory penalties pursuant to sections 1132 and 1140 of the United States Code. Furthermore, Dr. Ozcelebi asserted counterclaims against Dr. Chowdary for: (1) malicious prosecution—when Dr. Chowdary pressed criminal trespass charges following the alleged October 13 midnight trespass incident; (2) assault—when Dr. Chowdary allegedly tried to physically assault Dr. Ozcelebi at VGC's office on October 14; and (3) invasion of privacy—when Dr. Chowdary allegedly continued to display Dr. Ozcelebi's name at VGC's office without Dr. Ozcelebi's consent after his employment at VGC had terminated.

## B. 2004 Motion for Special Exceptions and 2006 Special Exceptions Order

In August 2004, Dr. Chowdary filed special exceptions in response to Dr. Ozcelebi's answer and counterclaims. Dr. Chowdary sought special exceptions, arguing the following:

> Counsel for Defendant has previously brought to Dr. Ozcelebi's attention, through his counsel, that the affirmative defenses or other statements in Dr. Ozcelebi's Answer and Counterclaim that require verification (those that have been allegedly verified in that document) are not properly verified in this pleading.

> Counsel for Plaintiffs has requested counsel for Dr. Ozcelebi to correct the lack of proper verification regarding these issues. Counsel for Dr. Ozcelebi has refused. Dr. Ozcelebi has not properly verified any of the allegations claimed for verification. Each of these allegations may only be properly asserted by sworn and verified pleading. The facts supporting the allegations are not sworn. The pleading does not even swear to the propriety or correctness of the alleged[] claims or defenses. Dr. Ozcelebi does not verify the pleading at all. The verification is by his counsel. And the verification states only that the claims or defenses will be asserted, not that they are true and correct. And Dr. Ozcelebi and his counsel have wholly failed to verify the truthfulness and accuracy of the facts underlying the assertion of these defenses. . . . Plaintiffs specially except to each of these

12

claims or defenses that are improperly "verified." They may not properly support presentation of these issues to the jury or judgment based on them. They should be stricken.[1]

Texas Rule of Civil Procedure 93 is the source of legal authority for Dr. Ozcelebi's special exceptions. TEX. R. CIV. P. 93. Rule 93 lists sixteen pleas[2] for which verification is required "unless the truth of such matter[] appear[s] of record[.]" *Id.*

---

[1] We construe Dr. Chowdary's motion to target all eight paragraphs verified by Dr. Ozcelebi's attorney listed above.

[2] These sixteen pleas listed in Texas Rule of Civil Procedure 93 are:

(1) That the plaintiff has no legal capacity to sue or that the defendant has no legal capacity to be sued; (2) That the plaintiff is not entitled to recover in the capacity in which he sues, or that the defendant is not liable in the capacity in which he is sued; (3) That there is another suit pending in this State between the same parties involving the same claim; (4) That there is a defect of parties, plaintiff or defendant; (5) A denial of partnership as alleged in any pleading as to any party to the suit; (6) That any party alleged in any pleading to be a corporation is not incorporated as alleged; (7) Denial of the execution by himself or by his authority of any instrument in writing, upon which any pleading is founded, in whole or in part and charged to have been executed by him or by his authority, and not alleged to be lost or destroyed. Where such instrument in writing is charged to have been executed by a person then deceased, the affidavit shall be sufficient if it states that the affiant has reason to believe and does believe that such instrument was not executed by the decedent or by his authority. In the absence of such a sworn plea, the instrument shall be received in evidence as fully proved; (8) A denial of the genuineness of the indorsement or assignment of a written instrument upon which suit is brought by an indorsee or assignee and in the absence of such a sworn plea, the indorsement or assignment thereof shall be held as fully proved. The denial required by this subdivision of the rule may be made upon information and belief; (9) That a written instrument upon which a pleading is founded is without consideration, or that the consideration of the same has failed in whole or in part; (10) A denial of an account which is the foundation of the plaintiff's action, and supported by affidavit; (11) That a contract sued upon is usurious. Unless such plea is filed, no evidence of usurious interest as a defense shall be received; (12) That notice and proof of loss or claim for damage has not been given as alleged. Unless such plea is filed such notice and proof shall be presumed and no evidence to the contrary shall be admitted. A denial of such notice or such proof shall be made specifically and with particularity; (13) In the trial of any case appealed to the court from the Industrial Accident Board the following, if pleaded, shall be presumed to be true as pleaded and have been done and filed in legal time and manner, unless denied by verified pleadings: (a) Notice of injury; (b) Claim for compensation; (c) Award of the Board; (d) Notice of intention not to abide by the award of the Board; (e) Filing of suit to set aside the award; (f) That the insurance company alleged to have been the carrier of the workers' compensation insurance at the time of the alleged injury was in fact the carrier thereof; (g) That there was good cause for not filing claim with the Industrial Accident Board within the one year period provided by statute; (h) Wage rate. . . ; (14) That a party plaintiff or defendant is not doing business under an assumed name or trade name as alleged; (15) In the trial of any case brought against an automobile insurance company by an insured under the provisions of an insurance policy in force providing protection against uninsured motorists, an allegation that the insured has complied with all the terms of the policy as a condition precedent to bringing the suit shall

13

In 2006, two years after the motion was filed, the trial court granted Dr. Chowdary's special exceptions by way of an order that stated:

> The special exceptions are hereby GRANTED. The Court finds that the affirmative defenses or other statements in Dr. Ozcelebi's Answer and Counterclaim that require verification (those that have been allegedly verified in that document) are not properly verified in this pleading or subsequent pleadings.
>
> Each of the claims or defenses purportedly the subject of the prior alleged "verification" by [Dr. Ozcelebi's attorney] is STRICKEN.
>
> Each of these allegations may only be properly asserted by sworn and verified Pleading. Defendant Ozcelebi is ORDERED to replead with specificity, if assertion of these defenses or claims is desired, within ten days of this Order. Each fact, circumstance, act, or omission that Ozcelebi seeks or may seek to rely to support any of the stricken issues must be pled, if at all, within ten days or each such defense or allegation at issue that is not adequately and timely repled shall be deemed and is forever barred. Each such fact, circumstance, act, or omission is to be verified by affidavit of a witness stating the facts and information with specificity and stating that the facts and information are within the personal knowledge of the affiant. The circumstances and basis for such knowledge must be plead with specificity in order to reinstate or restate any such claim(s) or defense(s).

The final sentence of this order also ordered repleading as the following matter, which Dr. Chowdary had not specifically requested in his motion for special exceptions:

> Any alleged failure of consideration is required to be repled as to any consideration received and specifically why such consideration allegedly fails as a matter of law, if claimed, and/or as a matter of fact, if claimed.

Dr. Ozcelebi did not amend the pleadings targeted by the special exceptions order within the ten-day deadline set out in the order. In addition, the specific language of the trial court's special exceptions order struck the following:

---

be presumed to be true unless denied by verified pleadings which may be upon information and belief; (16) Any other matter required by statute to be pleaded under oath.

TEX. R. CIV. P. 93.

14

[A]ny claims regarding false imprisonment,[3] slavery,[4] illegality of governmental visa program(s) or illegality or unenforceability of any contract(s) regarding such programs or employment pursuant to such visa programs.[5]

The special exceptions order is dated February 16, 2006. The Hidalgo County Clerk certified a "true copy" of this order on December 31, 2008. Dr. Ozcelebi claimed he did not receive notice of the order granting special exceptions, or any hearing thereon, until January 2009.

## C. 2009 Motion to Compel and for Sanctions

By 2009, the lawsuit had been pending for over a decade. Dr. Chowdary believed Dr. Ozcelebi had not been entirely forthcoming in his responses to discovery. Dr. Chowdary filed a motion to compel and a motion to strike Dr. Ozcelebi's pleadings in their entirety as a death penalty sanction.[6] Among other things, Dr. Chowdary sought this relief based on Dr. Ozcelebi's deposition testimony that he had been trying to put this case "to sleep" and on his repeated failure to fully comply with discovery requests.

On January 13, 2009, the trial court granted Dr. Chowdary's motion to compel and ordered Dr. Ozcelebi to produce certain documents and to be available for further deposition. However, the trial court specifically held in abeyance and under advisement

---

[3] Dr. Ozcelebi never alleged "false imprisonment" as a counterclaim.

[4] Dr. Ozcelebi never alleged "slavery" as a counterclaim.

[5] The order also contains open-ended language stating that pleadings stricken by the order are "not limited to" those specifically stricken above, thus leaving open the possibility that the order may pertain to other claims and defenses raised by Dr. Ozcelebi.

[6] A death penalty sanction refers to a sanction which terminates the litigation by striking pleadings. *See Kutch v. Del Mar Coll.*, 831 S.W.2d 506, 513 n.3 (Tex. App.—Corpus Christi 1992, no writ). Like a special exception that is ignored, a death penalty sanction operates to strike the offender's pleadings, but the propriety of a death penalty sanction is governed by a wholly different standard than the standard for a special exception. *TransAm. Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991) (observing that a death penalty sanction should not be assessed "absent a party's flagrant bad faith or counsel's callous disregard for responsibility of discovery under rules").

15

Dr. Chowdary's motion to strike Dr. Ozcelebi's pleadings in their entirety as a death penalty sanction. Instead, the trial court admonished Dr. Ozcelebi verbally and in writing that further "non-compliance or delay [in responding to discovery requests] may be taken as an indication of the lack of merits of [Dr. Ozcelebi's] assertions and defenses, and adverse inferences, issue preclusion, or striking of some or all pleadings of [Dr. Ozcelebi] may result."

While the trial court specifically declined to issue death penalty sanctions with respect to all of Dr. Ozcelebi's pleadings, its order states that "relief" granted by the special exceptions order would be "re-ordered and imposed on the additional basis of sanctions against [Dr. Ozcelebi]." Based on this language in the order, it appears the trial court gave Dr. Ozcelebi a second chance to amend pleadings previously stricken by the special exceptions order within a newly established ten-day window, starting from the date of the January 13, 2009 order. Notably, Dr. Ozcelebi did not file amended pleadings by January 23, 2009—i.e., the deadline to re-plead under the new order. Instead, it was not until February 5, 2009 that Dr. Ozcelebi filed a "motion to abate" requesting permission to file amended pleadings out of time—this time, verified by Dr. Ozcelebi himself rather than his attorney. However, the trial court denied Dr. Ozcelebi's motion to abate. Dr. Ozcelebi does not deny he received notice of the January 13, 2009 order requiring him to replead. In his briefing to this Court, Dr. Ozcelebi describes the January 13, 2009 order as a "Death Penalty Order"—a characterization which Dr. Chowdary does not dispute. Therefore, in accordance with the understanding of the parties in this case, we construe the trial court's January 13, 2009 order as a death penalty sanction with respect to (and only with respect to) claims and defenses subject to the revived special exceptions order.

16

**D.    2010 Petition for Writ of Mandamus (*Ozcelebi I*)**

Dr. Ozcelebi filed a petition for writ of mandamus to set aside the trial court's special exceptions and sanctions order.  *See In re Ozcelebi*, No. 13-09-00662-CV, 2010 WL 95207, at *1 (Tex. App.—Corpus Christi Jan. 8, 2010, no pet.) (mem. op.) (orig. proceeding) (*Ozcelebi I*).  In a short per curiam opinion, we stated:

> Having reviewed and fully considered [Dr. Ozcelebi's] petition and motion, the response thereto filed by [Dr. Chowdary], and [Dr. Ozcelebi's] reply, this Court is of the opinion that [Dr. Ozcelebi] has not shown himself entitled to the relief sought and that the petition and motion should be denied. Accordingly, [Dr. Ozcelebi's] petition for writ of mandamus . . . [is] DENIED.

We also denied Dr. Ozcelebi's motion to reconsider en banc.  *See id.*  Following our decision, Dr. Ozcelebi sought mandamus in the Texas Supreme Court but was equally unsuccessful.  Thus, the case was returned to the trial court for further proceedings.

**E.    2013 Motion for Partial Summary Judgment**

In 2013, Dr. Chowdary filed a motion for partial summary judgment.  The motion sought summary judgment on both traditional and no-evidence grounds.  Dr. Chowdary sought traditional summary judgment as to his claims for breach of contract and breach of fiduciary duty.  Dr. Chowdary also sought no-evidence summary judgment as to Dr. Ozcelebi's counterclaims under ERISA, RICO, and FEAT and on Dr. Ozcelebi's contractual defenses of unenforceability, failure of consideration, and illegality of the Employment Agreement.  Dr. Chowdary's summary judgment *did not* seek damages for breach of fiduciary duty or attorney's fees for any contractual liability, and it did not address Dr. Ozcelebi's counterclaims for malicious prosecution, assault, and invasion of privacy.

17

Dr. Ozcelebi filed special exceptions, objections, evidence, and a written response to Dr. Chowdary's partial motion for summary judgment. Dr. Chowdary asserted that Dr. Ozcelebi's filing was untimely. After three hearings on the matter, the trial court agreed with Dr. Chowdary and struck Dr. Ozcelebi's evidence and written response as untimely.

## F.     2013 Supplemental Motion for Further Sanctions

Embedded in his motion for partial summary judgment, Dr. Chowdary urged a supplemental motion for further sanctions. This motion for sanctions alleged that Dr. Ozcelebi continued to engage in discovery abuses even after the trial court admonished him in 2009 to comply with discovery requests. In his motion for sanctions, Dr. Chowdary requested that the trial court "enforce presumptions previously ordered . . . and to enter sanctions based upon prior sanctions [o]rders, as to relief requested but held under advisement—and/or based on their new supplemental motion for further sanctions." However, the trial court specifically declined to rule on Dr. Chowdary's supplemental motion for further sanctions. Therefore, except for the pleadings stricken in 2009 by what we construe as a death penalty sanction, the trial court did not issue death penalty sanctions at any point up to 2013.

## G.     2013 Summary Judgment

After considering only Dr. Chowdary's partial motion for summary judgment, the trial court granted the motion. The trial court's order granting summary judgment makes the following findings:

> [Dr. Ozcelebi] breached fiduciary duties owed to VGC as his employer. This is a declaratory judgment, and the issue of damages resulting from such breach will be carried with the remainder of the case.
>
> [Dr. Ozcelebi] owes $250,000 to VGC as a minimum amount due for breach of contract, plus prejudgment interest in the maximum amount provided by

18

law, plus attorney's fees. This claim accrued in total on the date the contract was terminated, which the Court finds occurred no later than October 15, 1997. . . . Attorney's fees are recoverable on this claim, and the [c]ourt enters a declaratory judgment that they shall be awarded. The amount of attorney's fees at this time be carried with the remainder of the case. . . .

[Dr. Ozcelebi] contractually agreed to and owes further damages to VGC for violating the non-compete agreement regarding Hidalgo and Starr Counties of $240,000—payable and accrued in $10,000 installments each month for 24 months for violating the non-compete provision. . . . [As a matter of law, Dr. Ozcelebi voluntarily terminated his Employment Agreement with VGC].[7]

[A]ny claims [by Dr. Ozcelebi] relating to alleged breach of or failure to provide an ERISA approved retirement plan are preempted. . . .

[A]ny claims by [Dr. Ozcelebi] regarding [FEAT] have previously been stricken by this Court, including pursuant to one or more sanctions Order(s) of the Court. [Dr. Ozcelebi] has acknowledged this dismissal previously, and Ozcelebi unsuccessfully sought to overturn this Court's Order with the Texas Court of Appeals, the Texas Court of Appeals (en banc), and the Texas Supreme Court. [Dr. Chowdary] is entitled to entry of a take nothing judgment or declaration in [his favor] on any such claim or defense by [Dr. Ozcelebi]. A take nothing judgment is entered as to [Dr. Ozcelebi's] claims against [Dr. Chowdary], and a declaration is entered in favor of [Dr. Chowdary] on this issue.

[A]ny claims or defense by [Dr. Ozcelebi] against [Dr. Chowdary or VGC] claiming that [Dr. Chowdary] or VGC engaged in illegal activities with respect to hiring foreign doctors or the terms of their alleged work have been stricken or denied by the Court. Dr. Ozcelebi has acknowledged this dismissal previously, and he unsuccessfully sought to overturn this Court's Order with the Texas Court of Appeals, the Texas Court of Appeals (en banc), and the Texas Supreme Court. . . .

[Dr. Chowdary] is entitled to summary judgment regarding any claims or defense that the Employment Agreement lacked proper consideration, or was unenforceable for any reason, or that the provisions were unenforceable or actionable due to any alleged illegality. These claims have been stricken by the Court or been denied with prejudice by the Court. [Dr. Ozcelebi] has acknowledged this dismissal previously and unsuccessfully sought to overturn the Court's Order in this case with the

---

[7] This bracketed sentence is contained in a supplemental order granting the 2013 summary judgment. We incorporate the voluntariness finding into the original 2013 summary judgment for purposes of clarity.

19

Texas Court of Appeals, the Texas Court of Appeals (en banc), and the Texas Supreme Court.

. . .

The Court has granted the Motions for Partial Summary Judgment based on the state of the record, after ruling by separate Orders on the issues concerning striking or considering certain evidence not apparent from the record (such as metadata) and [Dr. Ozcelebi's] Response documents, including [Dr. Ozcelebi's] Response to [Dr. Chowdary's] Motions for Partial Summary Judgment and his Special Exceptions and Objections to [Dr. Chowdary's] Motions for Partial Summary Judgment, Plaintiff's Affidavit, and Summary Judgment Evidence. But the Court notes, finds, and ORDERS that even if all such information filed by [Dr. Ozcelebi] had been considered, the summary judgment rulings [are correct].

. . .

The Court hereby SEVERS the claims on which judgment is granted from the remainder of the case, except as otherwise provided above. This Order therefore constitutes a final and appealable judgment.

## H. Trial Court's Findings Regarding the Striking of Dr. Ozcelebi's Summary Judgment Evidence

After the 2013 summary judgment, the trial court entered an additional order explaining the basis for its decision to strike Dr. Ozcelebi's evidence and response to Dr. Chowdary's partial motion for summary judgment. In the order, the trial court stated:

[Dr. Chowdary] filed Traditional and No Evidence Motions for Partial Summary Judgment as well as their Supplemental Motion for Further Sanctions on or about April 19, 2013. The Court set the hearing on these matters for June 17, 2013. [Dr. Ozcelebi] requested an extension of time for the hearing. The Court reset the hearing for July 2, 2013. Dr. Ozcelebi requested another extension of time for the hearing, and the hearing was reset for July 9, 2013. These extensions were granted with agreement of the parties. [Dr. Ozcelebi] purported to file and serve documents responsive to [Dr. Chowdary's] Motions listed above on July 2, 2013 by allegedly mailing the documents for filing with the Court and for service upon counsel on July 2, 2013. These documents were titled:

1. [Dr. Ozcelebi's] Response to [Dr. Chowdary's Traditional and No Evidence Motions for Partial Summary Judgment; and

20

2. [Dr. Ozcelebi's] Special Exceptions to [Dr. Chowdary's] Motions for Summary Judgment and Objections to Plaintiff's Affidavit and Summary Judgment Evidence.

These documents shall sometimes be referred to in this Order as [Dr. Ozcelebi's] Summary Judgment Response documents or as [Dr. Ozcelebi's] Response documents.

On the morning of the hearing, July 9, 2013, [Dr. Ozcelebi] filed with the Clerk his Objections and Response to [Dr. Chowdary's] Supplemental Motion for Further Sanctions.

The court conducted a Hearing on July 9, 2013. [Dr. Chowdary] complained that [Dr. Ozcelebi] had not timely "filed" the Response documents with the Court and/or had not timely "served" the Response documents on counsel of record.[8] The Court notes that it will separately consider any issues concerning [Dr. Chowdary's] Supplemental Motion for Further Sanctions, including the timeliness of [Dr. Ozcelebi's] Response to that motion. The sanctions issues, including [Dr. Chowdary's] motion and [Dr. Ozcelebi's] response, including issues as to whether that Response was timely filed and served, will not be considered as part of the issues addressed by this Order, pertaining to the timeliness of [Dr. Ozcelebi's] Response documents to [Dr. Chowdary's] Motions for Partial Summary Judgment.

At the Hearing on July 9, 2013, [Dr. Chowdary] urged an oral Motion to strike [Dr. Ozcelebi's] Response documents to [Dr. Chowdary's] Motions for Partial Summary Judgment. And the Court conducted an inquiry into the timeliness of [Dr. Ozcelebi's] "filing" his Response documents with the Court and into the timeliness of [Dr. Ozcelebi's] "serving" his Response documents on [Dr. Chowdary's] counsel. At that hearing, the Court Ordered [Dr. Ozcelebi] to scan in color and e-mail all photographs and metadata regarding Mailbox Rule issues to opposing counsel. The Court further Ordered [Dr. Ozcelebi] to scan in color and email all Track and Confirm Sheets concerning the Response documents to [Dr. Chowdary's] counsel. The Court Ordered each party to file its Brief regarding any issues pertaining to the timeliness of the service or filing by July 26, 2013 by 5:00 p.m., with

---

[8] The trial court included the following footnote at this place in the order:

[Dr. Chowdary has] also complained that [he was] not served [Dr. Ozcelebi's] Objections and Response to [Dr. Chowdary's] Supplemental Motion for Further Sanctions by hand delivery on the day of the hearing, as represented by [Dr. Ozcelebi's] counsel in his Certificate of Service. Rather, [Dr. Chowdary] state[ed] that that document was served on [him] via certified mail, which [Dr. Ozcelebi's] counsel stated in a letter dated July 10, 2013 was mailed to [Dr. Chowdary] by certified mail. [Dr. Chowdary] noted further that that mail was first processed by the United States Postal Service at 8:22 p.m. on July 11, 2013 and was not delivered to them until July 15, 2013.

contemporaneous service via e-mail or fax to opposing counsel.  And the Court set a further hearing to consider the timeliness of filing and of serving [Dr. Ozcelebi's] Summary Judgment Response documents.

On August 26, 2013, the Court conducted a further extensive hearing regarding these issues. Both the July 9, 2013 and the August 26, 2013 Hearing were evidentiary hearings.  Among other things, the Court considered and accepted the Affidavit of Jose Rodriguez, offered by [Dr. Chowdary].  The Court has considered the filings, responses, arguments of counsel, and all evidence offered, except as may have been otherwise addressed by separate Court Order. The Court has taken judicial notice of its file and all matters, documents, and pleadings contained in it, including prior Court Orders. The Court is of the opinion that [Dr. Chowdary's] Motion to Strike [Dr. Ozcelebi's] Summary Judgment Response documents is well taken and should be GRANTED. The Court ORDERS that the following Response documents filed or urged by [Dr. Ozcelebi] are STRICKEN, and they shall not be considered by the Court:

1.  [Dr. Ozcelebi's] Response to [Dr. Chowdary's] Traditional and No Evidence Motions for Partial Summary Judgment; and

2.  [Dr. Ozcelebi's] Special Exceptions to [Dr. Chowdary's] Motions for Summary Judgment and Objections to Plaintiff's Affidavit and Summary Judgment Evidence.

The court finds that [Dr. Ozcelebi] failed to timely "file" the Response documents with the Court, and/or [Dr. Ozcelebi] filed [sic] to timely "serve" the Response documents on counsel for [Dr. Chowdary].

The court further notes that in its consideration of [Dr. Chowdary's] Motions for Partial Summary Judgment, the Court found that that even if [Dr. Ozcelebi's] Motion for Summary Judgment Response Documents had not been stricken, the Motions for Partial Summary Judgment would still be meritorious and would still be granted.

## I.    Severance, *Ozcelebi II,* and Remand for Disposition on Remaining Issues

As noted in the last paragraph of the 2013 summary judgment order excerpted above, the trial court severed claims adjudicated by Dr. Chowdary's 2013 summary judgment from the remainder of the case.  Following this severance, Dr. Ozcelebi appealed the 2013 summary judgment to this Court.  Dr. Ozcelebi argued that, among

other things, the severance was improper. We agreed with Dr. Ozcelebi and remanded the case back to the trial court to dispose all remaining issues in the severed action. *See Ozcelebi v. Chowdary,* No. 13-13-00659-CV, 2015 WL 6119495, at *6 (Tex. App.—Corpus Christi Oct. 15, 2015, no pet.) (mem. op.) (*Ozcelebi II*). The remaining issues included: (1) attorney's fees on Dr. Chowdary's breach of contract claim; (2) damages for Dr. Chowdary's breach of fiduciary duty claim; and (3) Dr. Ozcelebi's counterclaims for malicious prosecution, assault, and invasion of privacy.

## J. 2016 Mediation

On remand, the trial court ordered the parties to mediate the case in good faith. The trial court's order expressly stated that mediation was to occur with attorneys for both sides present. However, Dr. Ozcelebi instructed his attorney to be absent from the mediation, contrary to the dictates of the trial court's order. Dr. Ozcelebi attended the mediation by himself, and the mediation was discontinued shortly thereafter without reaching a settlement. After the mediation, Dr. Chowdary filed a motion for sanctions based on Dr. Ozcelebi's failure to comply with the mediation order that specifically instructed him to be present with his attorney. After conducting a hearing on the matter, the trial court ordered Dr. Ozcelebi to personally pay $4,400 to Dr. Chowdary as a sanction.

## K. 2016 Partial Summary Judgment and Death Penalty Sanction as to Remaining Counterclaims

On remand, Dr. Chowdary filed a partial hybrid motion for no-evidence and traditional summary judgment, as well as a second supplemental motion for further sanctions. The trial court granted both motions in an order that detailed the basis for its decision. In sum, the trial court rendered a take-nothing summary judgment as to Dr.

23

Ozcelebi's counterclaims for malicious prosecution, assault, and invasion of privacy on two grounds: (1) there was no evidence to support those counterclaims; and (2) Dr. Ozcelebi engaged in repeated, intentional, and continual discovery abuses both before and after *Ozcelebi II*, and therefore, his counterclaims should be stricken as a death penalty sanction. The order also awarded $378,750 in attorney's fees with respect to Dr. Chowdary's claim for breach of contract.

The trial court's 2016 summary judgment concluded with the following finality phrase: "This Order is a final Order that disposes of all remaining issues and all remaining parties. This Order is subject to appeal." Despite this finality language, the record contains no dollar amount with respect to damages for breach of fiduciary duty—i.e., one of the remaining issues carried by the 2013 summary judgment.[9] This appeal followed.

### III.    DR. OZCELEBI'S ISSUES ON APPEAL

Dr. Ozcelebi raises nine issues on appeal. We set out and organize them as follows:

- **Issue One—Propriety of Special Exceptions**

  - Dr. Ozcelebi contends the trial court erred in ordering him to replead claims and defenses subject to special exceptions.

- **Issue Two—Propriety of Death Penalty Sanctions**

  - Dr. Ozcelebi asserts the trial court erred in "granting [Dr. Chowdary's] request for death penalty discovery sanctions and entering the discovery sanction orders without adequate notice of alleged grounds or hearing, proper supporting evidence, attempting less severe measures, undertaking the requisite analysis, entering a proper order, and otherwise following governing Texas law."

---

[9] Neither party disputes the judgment is final for purposes of appeal. *See In re Elizondo*, 544 S.W.3d 824, 827 (Tex. 2018) (holding that order's finality phrase, which stated, "This judgment is final, disposes of all claims and all parties, and is appealable," was clear and unambiguous, rendering the order final for purposes of appeal).

24

- **Issue Three—Absence of Record**

  - Dr. Ozcelebi asserts he "is entitled to a new trial on the issue of the discovery or death penalty sanctions as no record exists regarding the granting of same."

- **Issue Four—Striking of Dr. Ozcelebi's 2013 Summary Judgment Evidence and Response**

  - Dr. Ozcelebi contends the trial court erred in striking as untimely his special exceptions, objections, evidence, and a written response to Dr. Chowdary's 2013 partial motion for summary judgment.

- **Issues Five, Six, and Seven—Propriety of 2013 and 2016 Summary Judgments**

  - Dr. Ozcelebi contends the 2013 and 2016 summary judgments do not withstand scrutiny under no-evidence and traditional summary judgment standards of review.

- **Issue Eight—Propriety of Mediation Sanction**

  - Dr. Ozcelebi contends the trial court erred in "entering mediation sanctions against [him] because the sanctions go beyond [the court's] inherent power and are unsupported under Texas jurisprudence and the evidence."

- **Issue Nine—Absence of Findings**

  - Dr. Ozcelebi's asserts the trial court "erred in failing to file [] findings of fact and conclusions of law when [he] properly requested the same in accordance with the Texas Rules of Civil Procedure."

We address the issues in the order listed above.

## IV. SPECIAL EXCEPTIONS

By his first issue, Dr. Ozcelebi contends the trial court improperly struck claims and defenses subject to the special exceptions order.

### A. Did *Ozcelebi I* (2010) already resolve this issue?

25

As a threshold matter, Dr. Chowdary appears to contend that in *Ozcelebi I*, we resolved Dr. Ozcelebi's complaint regarding the special exceptions order against him. Notably, the trial court's 2013 summary judgment order also appears to specifically rely on our decision in *Ozcelebi I* in disposing of some of Dr. Ozcelebi's claims and defenses.

However, *Ozcelebi I* resolved a different issue pertinent to the mandamus proceeding under review in that case—namely, (1) whether Dr. Ozcelebi had an adequate remedy at law in which to complain about the special exceptions issue, and (2) if no adequate legal remedy existed, whether the trial court had the discretion to grant Dr. Chowdary's motion for special exceptions or was instead bound by a ministerial duty to deny it. *See In re Perkins*, 512 S.W.3d 424, 429 (Tex. App.—Corpus Christi 2016, no pet.) (providing that "[t]o be entitled to mandamus relief, the [petitioner] must show: (1) that he has no adequate remedy at law; and (2) that what [the petitioner] seeks to compel is a ministerial act"); *see also Int'l Paper Co. v. Garza*, 872 S.W.2d 18, 19 (Tex. App.—Corpus Christi 1994, no writ) (denying mandamus relief because the party aggrieved by trial court's special exception order had an adequate remedy at law by appeal to correct the ruling). Thus, *Ozcelebi I* denied mandamus relief without addressing whether the special exception order itself was proper. That issue had not yet ripened in *Ozcelebi I* because, "[u]nlike appeal, which is a matter of right, mandamus is an extraordinary remedy, intended to be available in only limited circumstances at the discretion of the court. It is a vehicle for correcting blatant injustice that otherwise would elude review by the appellate courts." *See In re XTO Energy Inc.*, 471 S.W.3d 126, 136 (Tex. App.—Dallas 2015, no pet.) (citations and quotations omitted). A special exceptions issue is generally not the kind of issue that eludes appellate review such that it must be corrected

26

by mandamus to prevent injustice. *See Moseley v. Hernandez*, 797 S.W.2d 240, 242 (Tex. App.—Corpus Christi 1990, no writ) (observing that when the trial court sustains a special exception, "the party ordered to re-plead has [the option of] stand[ing] on the pleadings and test[ing] on appeal the validity of the trial court's ruling"). Consequently, we cannot so easily dispose of Dr. Ozcelebi's special exceptions issue by saying *Ozcelebi I* already addressed and rejected it. Instead, the special exceptions issue is procedurally ripe for substantive review in this direct appeal, which we turn to now.

## B. Applicable Law

Texas Rule of Civil Procedure 45 describes the level of specificity required for pleadings in a district and county court. TEX. R. CIV. P. 45. Rule 45 states that pleadings "shall . . . consist of a statement in plain and concise language of the plaintiff's cause of action or the defendant's grounds of defense. That an allegation be evidentiary or be of legal conclusion shall not be grounds for an objection when fair notice to the opponent is given by the allegations as a whole[.]" *Id.* R. 45(b). Rule 45 also states that pleadings shall "contain any other matter which may be required by any law or rule authorizing or regulating any particular action or defense." *Id.* R. 45(c).

"Rule 45 does not require that the plaintiff set out in his pleadings the evidence upon which he relies to establish his asserted cause of action." *Chambers v. Am. Hallmark Ins. Co. of Tex.*, 465 S.W.3d 389, 394 (Tex. App.—Corpus Christi 2015, no pet.) (quoting *Paramount Pipe & Supply Co. v. Muhr,* 749 S.W.2d 491, 494–95 (Tex. 1988)). A petition is sufficient under Rule 45 if it gives "fair and adequate notice of the facts upon which the pleader bases his claim." *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982).

The purpose of this rule is to "give the opposing party information sufficient to enable him to prepare a defense." *Id.*

When a party fails to specially except, courts should construe the pleadings liberally in favor of the pleader. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000). "An opposing party should use special exceptions to identify defects in a pleading so that they may be cured, if possible, by amendment." *Id.* A special exception informs the opposing party of defects in its pleadings, so the party may have an opportunity to cure the defect. *Id.* "A special exception shall not only point out the particular pleading excepted to, but it shall also point out intelligibly and with particularity the defect, omission, obscurity, duplicity, generality, or other insufficiency in the allegations in the pleading excepted to." TEX. R. CIV. P. 91. "If the special exception is not specific, it is a prohibited general demurrer and should be overruled." *Chambers*, 465 S.W.3d at 398; *see* TEX. R. CIV. P. 90 (stating that "[g]eneral demurrers shall not be used"). The degree of specificity in the special exception determines whether it amounts to a prohibited general demurrer. *See City of Houston v. S. Pac. Transp. Co.*, 504 S.W.2d 554, 555 (Tex. Civ. App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.).

When, as here, the trial court sustains a special exception, the party ordered to re-plead has two options: "(1) amend the pleadings to cure the defect or (2) stand on the pleadings and test on appeal the validity of the trial court's ruling." *Moseley*, 797 S.W.2d at 242.

### C. Standard of Review

The trial court has wide discretion in ruling on special exceptions and its action in sustaining them, where it grants leave to amend, will not be disturbed on appeal in the absence of an abuse of discretion. A trial court abuses its discretion if it: (1) reaches a decision so arbitrary and

28

unreasonable as to amount to a clear and prejudicial error of law; (2) fails to correctly analyze or apply the law; or (3) acts without reference to any guiding rules or principles.

*Chambers*, 465 S.W.3d at 397–98.

## D. Discussion

As we understand it, Dr. Ozcelebi's first issue raises four complaints about the special exceptions order.

### 1. No Notice of Special Exceptions

First, Dr. Ozcelebi argues the special exceptions order must be vacated because he received no notice of the 2004 motion for special exception, no notice of any hearing thereon, and no notice of the 2006 order granting same, and he was not afforded an adequate opportunity to cure his pleadings after the special exceptions order was entered. To support his position, Dr. Ozcelebi cites affidavit testimony from his then-attorney stating that he never received notice of anything related to special exceptions. However, this testimony is in conflict with the certificate of service portion of Dr. Chowdary's 2004 motion, which states: "I hereby certify that on this 16th day of August, 2004, I served a true and correct copy of this instrument upon the attorney-in-charge for Defendants via hand delivery."[10] Thus, with respect to the special exceptions motion itself, the question of whether Dr. Ozcelebi received notice is a fact issue more appropriately left to the trial court to resolve. *See Texaco, Inc. v. Phan*, 137 S.W.3d 763, 766–68 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (recognizing that the question of whether notice was received is ultimately a fact issue for the trial court to resolve); *see generally In re Doe 4*, 19 S.W.3d 322, 325 (Tex. 2000) (noting that, as a fact finder, the

---

[10] The record shows Dr. Ozcelebi's retained his then-attorney on August 10, 2004.

29

trial court is given great latitude to believe or to disbelieve a witness's testimony, particularly if the witness is interested in the outcome).

In any event, we believe issues regarding lack of notice with respect to any hearing on the special exceptions motion or order became moot in January 2009—when Dr. Ozcelebi received notice that the special exceptions order had been entered and nevertheless missed the newly established ten-day deadline to replead.

### 2. Special Exceptions Order Constitutes a Prohibited General Demurrer

Second, Dr. Ozcelebi argues Dr. Chowdary's motion for special exceptions was vague and the trial court's special exceptions order required a level of factual specificity that amounted to a prohibited general demurrer. We disagree. The special exceptions concerned specific paragraphs contained within Dr. Ozcelebi's answer—3, 4, 5, 15, 16, 17, 18, 19. Dr. Chowdary directed Dr. Ozcelebi to the complaint with respect to those paragraphs by asserting that his attorney's verification was not sufficiently based on personal knowledge. Dr. Chowdary requested the trial court order Dr. Ozcelebi to replead based on those special exceptions. Therefore, we cannot conclude the special exceptions were so vague as to constitute a prohibited general demurrer. *See Chambers*, 465 S.W.3d at 398.

### 3. Rule 93 Verification Requirement was Excused and/or Otherwise Satisfied

Third, Dr. Ozcelebi asserts the special exceptions order was based on the legally incorrect premise that verification was required as to matters alleged in his answer. Dr. Ozcelebi points out that, although Rule 93 lists sixteen different types of pleas for which verification is required, it states that the verification requirement is excused when "the truth of such matters appear of record." TEX. R. CIV. P. 93. According to Dr. Ozcelebi,

the truth of matters pleaded in his answer that are listed under Rule 93 (for example, lack of consideration) appears on the face of this record because the allegedly unenforceable Employment Agreement was attached to the pleadings. However, Dr. Ozcelebi provides no legal authority to support his assertion that the truth regarding a contractual defense invariably appears on the face of the contract sought to be enforced by the opposing party such that verification otherwise required by Rule 93 is excused, and we find none.

By a sub-issue to this complaint, Dr. Ozcelebi asserts that, even if verification was required, his attorney properly verified the subject pleas on his behalf. However, in *Cantu v. Holiday Inns*, we held that counsel's verification of pleas subject to Rule 93 was improper. 910 S.W.2d 113, 116 (Tex. App.—Corpus Christi 1995, writ denied). We elaborated:

> A party's attorney may verify the pleading where he has knowledge of the facts, but does not have authority to verify based merely on his status as counsel. *See* TEX. R. CIV. P. 14; *Gorrell v. Tide Prod., Inc.*, 532 S.W.2d 390, 395 (Tex. Civ. App.—Amarillo 1975, no writ) (holding that a company officer who did not have personal knowledge of certain matters could not deny them under oath since they would be hearsay as to him). Here, counsel does not show any basis in the pleading or in her affidavit for her personal knowledge of relevant facts. We therefore agree with appellant that counsel's verification is insufficient to meet the requirements of Rule 93.

*Id.* Like the attorney in *Cantu*, Dr. Ozcelebi's attorney failed to show any basis in his affidavit for his personal knowledge of the relevant facts. *See id.* And Dr. Ozcelebi does not provide, and we do not find, any legal authority indicating that the basis-for-personal-knowledge requirement is satisfied, *ipse dixit*, by his attorney's affidavit statement that every statement contained within the relevant paragraphs of the answer "are within his personal knowledge and true and correct." Under these circumstances, we agree with

31

the trial court that the attempted verification by Dr. Ozcelebi's attorney did not satisfy Rule 93. *See* TEX. R. CIV. P. 93.

### 4. Special Exceptions Order Exceeds Relief Requested

Fourth, Dr. Ozcelebi argues that the special exceptions order "exceed[ed] the relief sought by [Dr. Chowdary in his motion for special exceptions]." Specifically, Dr. Ozcelebi asserts the final sentence of the special exceptions order required additional specificity as to the alleged failure of consideration[11] of the Employment Agreement when Dr. Chowdary's motion for special exceptions only requested that the contractual defense be properly verified. However, error (if any) in ordering repleading beyond that which Dr. Chowdary's motion specifically requested does not call for reversal because, as we explained in Part IV(D)(3) of this opinion, Dr. Ozcelebi has failed to demonstrate that the trial court erred in striking the failure-of-consideration defense based on a ground specifically excepted to by Dr. Chowdary in his motion—i.e., lack of proper verification. Therefore, the fact that the failure-of-consideration defense may have been stricken on a ground not specifically excepted to by Dr. Chowdary is, at worst, harmless error. *See* TEX. R. APP. P. 44.1 (providing that "[n]o judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals").

### 5. Summary

---

[11] As previously noted, the final sentence of the special exceptions order stated: "Any alleged failure of consideration is required to be repled as to any consideration received and specifically why such consideration allegedly fails as a matter of law, if claimed, and/or as a matter of fact, if claimed."

32

In sum, Dr. Ozcelebi has failed to demonstrate on appeal that the trial court, in striking Dr. Ozcelebi's pleadings subject to the special exceptions order, (1) reached a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law, (2) failed to correctly analyze or apply the law, or (3) acted without reference to any guiding rules or principles. *See Chambers*, 465 S.W.3d at 397–98. Therefore, we cannot say the trial court abused its discretion in ruling the way it did. We overrule Dr. Ozcelebi's first issue.

## V. 2009 DEATH PENALTY ORDER

By his second issue, Dr. Ozcelebi contends the trial court erred in entering the 2009 Death Penalty Order. However, as we explained in Part II(C) of this opinion, the 2009 Death Penalty Order struck the same claims and defenses subject to the special exceptions order, which we upheld in Part IV of this opinion. Consequently, the propriety of the 2009 Death Penalty Order is not necessary to a final disposition of this appeal, and we will not address it. *See* TEX. R. APP. P. 47.1 (stating that an appellate court "must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal"). We overrule Dr. Ozcelebi's second issue as moot.[12]

## VI. ABSENCE OF RECORD REGARDING 2009 DEATH PENALTY ORDER

---

[12] We note that Dr. Ozcelebi's second issue challenged the trial court's 2009 "Death Penalty Order," and nothing else. He provided no argument regarding the trial court's 2016 death penalty sanction, which covered repeated, intentional, and continual discovery abuses well after the 2009 Death Penalty Order was entered. Therefore, Dr. Ozcelebi's complaints about the 2009 Death Penalty Order (second issue) do not adequately address the basis for the trial court's 2016 death penalty sanction. We conclude Dr. Ozcelebi's second issue is inadequately briefed to the extent it challenges the 2016 death penalty sanction as to his remaining counterclaims. *See* TEX. R. APP. P. 38.1(i).

By his third issue, Dr. Ozcelebi asserts he is entitled to a new trial because there is no reporter's record for certain hearings that allegedly took place before the 2009 Death Penalty Order.

## A.     Applicable Law

Texas Rule of Appellate Procedure 34.6(f) states "[a]n appellant is entitled to a new trial under the following circumstances:

(1) if the appellant has timely requested a reporter's record;

(2) if, without the appellant's fault, a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed or— if the proceedings were electronically recorded—a significant portion of the recording has been lost or destroyed or is inaudible;

(3) if the lost, destroyed, or inaudible portion of the reporter's record, or the lost or destroyed exhibit, is necessary to the appeal's resolution; and

(4) if the lost, destroyed or inaudible portion of the reporter's record cannot be replaced by agreement of the parties, or the lost or destroyed exhibit cannot be replaced either by agreement of the parties or with a copy determined by the trial court to accurately duplicate with reasonable certainty the original exhibit."

TEX. R. APP. P. 34.6(f).

## B.     Discussion

Dr. Ozcelebi asserts he timely requested the reporter's record for the following dates:  October 16, 2006, December 11, 2006, and January 5, 2009.  By requesting the reporter's record for these dates, Dr. Ozcelebi satisfied the first element above for obtaining a new trial.  *See id.*  However, we cannot say the remaining elements are satisfied.

As to the second element, the court reporter assigned to the trial court on January 5, 2009 testified that no hearing took place that day.  And none of the court reporters

34

believed to have been reporting for the court in 2006 could confirm that any hearings were held on the two earlier dates. One court reporter could only say that she could not determine whether hearings were held because she had a practice of "purging" her notes older than five years, and Dr. Ozcelebi's request for the 2006 record came in 2014. One cannot lose or destroy that which never existed, and the evidence in this case does not establish that hearings were held on those dates.

Furthermore, even if hearings were held but records have since been lost or destroyed, Dr. Ozcelebi still must show it was not his fault. *See id.* There is no evidence in the record concerning the question of who is at fault. But more importantly, Dr. Ozcelebi must show a record of these allegedly existent hearings is "necessary to the appeal's resolution;" otherwise, he cannot satisfy the third element above. *See id.* We are confident they are not necessary because the claims stricken by death penalty sanctions were also stricken based on the special exceptions order, which we affirmed in Part IV of this opinion. And as we just explained in Part V of this opinion, the special exceptions order renders inconsequential the propriety of any death penalty sanction. It follows, then, that any missing reporter's record concerning the death penalty issue would be equally inconsequential to this appeal.

We conclude Dr. Ozcelebi failed to satisfy the elements for obtaining a new trial under Rule 34.6(f) based on allegedly lost or destroyed reporter's records. *See id.* We overrule his third issue.

## VII. 2013 AND 2016 SUMMARY JUDGMENTS

By what we understand to be his fifth, sixth, and seventh issues, Dr. Ozcelebi seeks to reverse the summary judgments on the following grounds: (1) the 2013

35

summary judgment does not withstand scrutiny under a traditional summary judgment standard of review as to Dr. Chowdary's claims for (a) breach of contract and (b) breach of fiduciary duty, and as to Dr. Ozcelebi's counterclaims under (c) ERISA and (d) RICO; and (2) the 2016 summary judgment does not withstand scrutiny under a no-evidence summary judgment standard of review as to Dr. Ozcelebi's counterclaims for (a) malicious prosecution, assault, and invasion of privacy, and (b) the attorney-fee award with respect to Dr. Chowdary's breach of contract claim lacks legally sufficient evidence.  We address Dr. Ozcelebi's complaints with respect to each summary judgment.

## A.    2013 Summary Judgment (Traditional)

### 1.    Traditional Summary Judgment Standard of Review

In a traditional motion for summary judgment, the movant (Dr. Chowdary) has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985).  If the movant's motion and summary judgment proof facially establish a right to judgment as a matter of law, the burden shifts to the non-movant (Dr. Ozcelebi) to raise a material fact issue sufficient to defeat summary judgment.  *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).  A plaintiff seeking traditional summary judgment (Dr. Chowdary) must conclusively prove each element of his cause of action as a matter of law.  *See Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 704 (Tex. App.—Houston [1st Dist.] 2014, no pet.).  We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law.  *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied).

### 2. Scope of Summary Judgment Evidence under Review

Before we apply this traditional summary judgment standard to the summary judgment under review, we take up Dr. Ozcelebi's fourth issue, which, as noted above, complains about the trial court's ruling to strike his summary judgment evidence as untimely. We address Dr. Ozcelebi's fourth issue first because it controls the scope of evidence subject to review in applying the traditional summary judgment standard to the facts of this case.

### a. Applicable Law and Standard of Review

Under Texas Rule of Civil Procedure 166a, a summary-judgment movant must serve and file his motion and any supporting affidavits at least twenty-one days before the time specified for hearing. TEX. R. CIV. P. 166a(a). Once the motion is served and filed, the nonmovant may serve and file any responsive evidence at least seven days prior to the day of the hearing. *Id*. R. 166a(c). The Mailbox Rule applies when serving and filing summary judgment documents. *Id.* R. 5. The Mailbox Rule provides that "[i]f any document is . . . deposited in the mail on or before the last day for filing same, the same . . . shall be . . . deemed filed in time." *Id*. "A legible postmark affixed by the United States Postal Service shall be prima facie evidence of the date of mailing." *Id.* We review the trial court's ruling under the Mailbox Rule for an abuse of discretion. *See Alvarez v. Thomas*, 172 S.W.3d 298, 302 (Tex. App.—Texarkana 2005, no pet.).

### b. Discussion

Here, the trial court admitted a track-and-confirm printout for the package containing the excluded summary judgment evidence. The track-and-confirm sheet shows that the United States Postal Service initially processed the package six days

before the originally-scheduled summary judgment hearing. The sheet reflects that the package was first processed at a mail facility in San Antonio. However, at an evidentiary hearing on this issue, Dr. Ozcelebi's attorney testified that he placed the package inside a mailbox located in Laredo seven days before the originally-scheduled hearing date—an assertion which, if true, makes the filing timely under the Mailbox Rule. *See* TEX. R. CIV. P. 5. In addition to his testimony, Dr. Ozcelebi's attorney introduced a photo, allegedly taken by his legal assistant on a cellular phone, which depicts a package around the vicinity of a mailbox allegedly located in Laredo. Dr. Ozcelebi's attorney stated he took the photo as a "precaution" just in case the issue regarding the timing of the mailout became a point of contention. However, two pieces of evidence also considered by the trial court conflict with Dr. Ozcelebi's factual assertion: (1) the track-and-confirm printout sheet shows no trace of the package departing from a Laredo mail facility seven days before the originally-scheduled hearing as he claimed; and (2) Jose Rodriguez, a retired United States Postal Service employee, testified by affidavit that (a) a Laredo postal stamp would be affixed to all certified mail deposited in Laredo before transmittal to other stations down line, (b) all certified mail deposited at the Laredo station would be scanned for purposes of tracking and confirmation before delivery to another location down the line, and (c) the package was neither stamped nor scanned at the Laredo mail facility seven days before the originally-scheduled hearing date.[13] We conclude the trial court, as the fact finder on this evidentiary issue, could have reasonably found that Dr. Ozcelebi's summary judgment evidence was served and/or filed only six days before the

---

[13] On appeal, Dr. Ozcelebi asks us to strike the retired postal employee's affidavit as incompetent evidence. We decline to do so. The affidavit states the employee's credentials and states that he has personal familiarity with the policies and practices of the postal service.

originally-scheduled summary judgment hearing—making the filing untimely under Rule 166a(c).[14]

Nonetheless, Dr. Ozcelebi argues that, even if it were true that the summary judgment evidence was served and/or filed only six days before the originally-scheduled summary judgment, the trial court ordered a two-month reset of the hearing—thereby making the filing undisputedly timely when calculated from the reset date. Dr. Ozcelebi's argument is well-taken but misplaced. Reviewing courts (including this Court) have held that a summary judgment nonmovant's filing is generally deemed timely if the trial court

---

[14] Dr. Ozcelebi attempted to conclusively establish he placed the package in a Laredo mailbox on the seventh day before the hearing by trying to admit metadata information from his legal assistant's phone. The metadata information purports to place the map coordinates of the phone with which the photo was taken around Laredo on the seventh day before the originally-scheduled hearing. However, it appears the trial court disallowed the metadata information to be considered to determine whether the package departed from Laredo on the seventh day. In any event, we agree with Dr. Chowdary that, even had the metadata information been considered by the trial court, it did not conclusively establish the date of the mailing. The metadata proves a phone located in Laredo took a photo of a package near a Laredo mailbox. It does not conclusively show the package in the photo was the same one that contained Dr. Ozcelebi's summary judgment evidence or that the package was ever actually placed in the mailbox. Therefore, we believe the trial court, as the fact finder, would have had discretion to exclude Dr. Ozcelebi's responsive summary judgment evidence as untimely even considering the photo's metadata information. During the pendency of this appeal, Dr. Ozcelebi requested that we order the Hidalgo County Clerk to forward the original photo exhibits, which, according to Dr. Ozcelebi, purport to depict the photos in color and high resolution. This was apparently requested in an attempt to conclusively establish compliance with the Mail Box Rule by showing that the package was deposited in a Laredo mail box on the seventh day prior to the originally scheduled hearing date. On January 11, 2018, we ordered the Hidalgo County Clerk to forward the original exhibit photos. On January 16, 2018, the deputy clerk informed us that "after a complete review of the case file, we have found there is no additional documents, images, or exhibits." In light of the deputy clerk's response, Dr. Ozcelebi now asks this Court to grant his "Motion to Substitute Documents on Record" to "replace the low-resolution, black & white copies of the same documents that are in the record with high-resolution, color versions of the documents contained herein." Dr. Ozcelebi argues in his motion we may consider the color photos he provides under Texas Rule of Procedure 43.6, which provides "[t]he court of appeals may make any other appropriate order that the law and the nature of the case require." Rule 43.6 is found under the general heading "Judgments of the Court of Appeals" of the rules of appellate procedure. Other than citing this rule, Dr. Ozcelebi provides no case authority of a reviewing court harnessing the open-ended language of that rule to substitute or otherwise modify the record on appeal, and we find none. We also note that the rules governing the appellate record, and any supplementation thereof, are codified under a different rule—Rule 34—of the rules of appellate procedure. Having considered Dr. Ozcelebi's motion, as well as Dr. Chowdary's response, we hereby DENY Dr. Ozcelebi's "Motion to Substitute Documents on Record." Although we have denied the motion, we would not be persuaded that the color version of photo exhibits contained in the supplemental clerk's record at pages 98–165 impugn the trial court's evidentiary ruling or the deference we accord it.

resets the summary judgment hearing and the nonmovant files his responsive evidence seven days before the new hearing date—particularly when the record gives every indication that the trial court considered the evidence as timely filed. *See Allen v. Roddis Lumber & Veneer Co.*, 796 S.W.2d 758, 761 (Tex. App.—Corpus Christi 1990, writ denied) (concluding that responsive evidence was timely by calculating seven-day deadline from reset date and observing that "Nothing in the record shows that the trial court did not consider the timely filed affidavits"); *see also Tidwell v. Empire Mortg. Ltd. P'ship*, No. 05-97-01385-CV, 1999 WL 1012952, at *1 (Tex. App.—Dallas Nov. 8, 1999, no pet.) (mem. op.); *Barry v. Moores*, No. B14-91-00884-CV, 1992 WL 110706, at *4 (Tex. App.—Houston [14th Dist.] May 28, 1992, writ denied) (mem. op.). Here, however, the record shows that the trial court had no intention of resetting the summary judgment hearing for Dr. Ozcelebi's summary judgment evidence to be considered timely filed in advance of the reset date. Instead, the trial court clarified at the originally-scheduled hearing that the two-month reset was to resolve the timeliness issue, stating:

> I'm gonna give you guys whatever time you need to address [the timeliness issue]. And because more time passes doesn't mean that you're automatically gonna have timely filed this [summary judgment evidence] because I'm still gonna address [the timeliness issue] before I move on.

The trial court clearly intended to resolve the timeliness issue before hearing the summary judgment—hence, the reason for the reset. Therefore, we cannot conclude that this is an appropriate case to apply the rule that postponing a hearing date results in a later response deadline for a summary judgment nonmovant. Dr. Ozcelebi's reliance on this rule is misplaced.

Because the trial court had discretion to exclude Dr. Ozcelebi's summary judgment evidence as untimely, we limit summary judgment evidence to that which Dr. Chowdary

40

provided in support of his partial motion for summary judgment—i.e., the evidence chronicled in Part I(A) & (B)(1) of this opinion, not Part I(B)(2). Within this framework, we now consider whether the 2013 summary judgment withstands scrutiny under the traditional summary judgment standard as to each claim it addresses.

### 3. Claims Addressed in 2013 Summary Judgment

#### a. Breach of Contract

By granting summary judgment as to Dr. Chowdary's claim for breach of contract, the trial court found, as a matter of law, that: (1) Dr. Ozcelebi voluntarily left and competed against VGC in Hidalgo County in violation of the non-compete clause, thus entitling VGC and Dr. Chowdary to $240,000 in damages; and (2) Dr. Ozcelebi's employment at VGC terminated before the second anniversary of his three-year contract term, thus entitling VGC and Dr. Chowdary to $250,000 in liquidated damages.

On appeal, Dr. Ozcelebi asserts that Dr. Chowdary failed to conclusively establish that he breached the relevant provisions of the Employment Agreement, and therefore, both damage awards must be reversed.

##### (i) *$240,000 for Voluntarily Leaving and Competing with VGC in Hidalgo County*

Here, the admissible summary judgment evidence showed that Dr. Ozcelebi indicated he would leave VGC unless Dr. Chowdary agreed to change certain policies. When Dr. Chowdary refused to make the changes, Dr. Ozcelebi established DDS, found and leased office space on a multiyear term, contracted for phone service at the office, opened a bank account in the company's name with checks issued in DDS's name, and printed DDS business cards. In late September 1997, Dr. Ozcelebi distributed DDS business cards to patrons of a charity event where it was publicly announced that Dr.

41

Ozcelebi would be leaving VGC to start DDS. In early October, Dr. Chowdary learned of what was happening and met with Dr. Ozcelebi. During this meeting, Dr. Ozcelebi stated his last day at VGC would be October 3, that he did not intend to honor the Employment Agreement, and that he would rather spend thousands of dollars in attorney's fees to undo it. Dr. Ozcelebi then removed all his personal belongings from his office. According to Dr. Chowdary, Dr. Ozcelebi did not report to work on October 3; instead, according to another gastroenterologist, Dr. Ozcelebi began treating patients for DDS on that day. We conclude the admissible summary judgment evidence established, as a matter of law, that Dr. Ozcelebi competed against VGC no later than October 3, thereby violating the non-compete provision.

Dr. Ozcelebi points out the non-compete provision triggers only if he "voluntarily" left VGC, and there is at least a fact issue as to whether Dr. Chowdary fired him on October 14 at VGC's office. However, the admissible summary judgment evidence showed that Dr. Ozcelebi left VGC on his own volition before that time—when he told Dr. Chowdary his last day would be October 3 and then saw a non-VGC patient that day instead. Dr. Ozcelebi's attempt to record and "stage" an involuntary termination event with his tape recorder at VGC's office on October 14 does not change the fact that he had already voluntarily left VGC over ten days earlier.

Nevertheless, Dr. Ozcelebi argues the non-compete provision constitutes an unlawful restraint on trade in violation of section 15.50 of the Texas Business and Commerce Code. Dr. Ozcelebi initially made this argument in paragraph 19 of his answer—i.e., one of the paragraphs targeted and struck by the special exceptions order.

42

We affirmed the special exceptions order in Part IV(D)(5) of this opinion. We will not revisit the special exceptions issue.

In any event, we reject Dr. Ozcelebi's argument that the non-compete provision constitutes an unlawful restraint on trade. Section 15.50 states:

> a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promise.

TEX. BUS. & COM. CODE ANN. § 15.50 (West, Westlaw through 2017 1st C.S.). The non-compete provision in this case was part of an otherwise enforceable Employment Agreement; it was limited to only two counties in Texas, Hidalgo and Starr; it only lasted for two years; and it only applied to the practice of medicine. We conclude the non-compete provision did not impose a greater restraint than was necessary to protect the goodwill and other business interest of the promise. *Id.*

Finally, Dr. Ozcelebi claims that, a few months into his employment at VGC, the parties modified the non-compete provision to allow him to practice medicine in Hidalgo County outside the auspices of VGC. Accordingly, Dr. Ozcelebi asserts there is a fact issue regarding whether he breached the non-compete clause as allegedly modified. However, to support this position, he cites only *his* summary judgment evidence, which the trial court excluded and which we affirmed in Part VII(A)(2) of this opinion. We will not revisit that ruling.

### (ii) *$250,000 Liquidated Damages Clause for Terminating Employment Before Second Year of Three-Year Contract Term*

43

The Employment Agreement specifically provided that VGC could terminate Dr. Ozcelebi if he refused to comply with "the provisions of [the] Agreement" or "reasonable policies, standards, and regulations of [VGC]." The admissible summary judgment evidence showed that Dr. Ozcelebi violated the non-compete clause of the agreement, as explained above. The evidence further shows Dr. Ozcelebi secretly recorded conversations with VGC employees on the VGC premises, which, according to Dr. Chowdary, violated VGC's workplace policy and HIPAA regulations. It is undisputed these things happened before the second year of the three-year contract term, thus triggering the $250,000 liquidated damage clause.

Dr. Ozcelebi asserts the liquidated damage clause amounts to an unenforceable penalty. "In order to enforce a liquidated damage clause, the court must find: (1) that the harm caused by the breach is incapable or difficult of estimation, and (2) that the amount of liquidated damages called for is a reasonable forecast of just compensation." *See Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991). However, generally, the defense of penalty is an affirmative defense that must be pleaded, or it is waived. *Id.* at 789. Here, the trial court's special exceptions order struck this affirmative defense. We will not revisit that issue. Nevertheless, Dr. Ozcelebi argues that he may raise the penalty defense for the first time on appeal because the liquidated damages provision constitutes a prohibited penalty on its face. To support his position, Dr. Ozcelebi relies on the Texas Supreme Court's decision in *Phillips*. 820 S.W.2d at 788. However, *Phillips* is distinguishable. In *Phillips*, the supreme court applied what it called a "narrow" exception to the general requirement that affirmative defenses be pleaded. *Id.* at 790. The exception applied in *Phillips* based on the language included in the liquidated damage provision that the

44

supreme court was reviewing in that case. *Id.* at 789. Specifically, the liquidated damage

provision provided that one party agreed to pay the other some multiple of actual

damages for breach of the agreement. *Id.* The supreme court noted that this multiple-

of-actual-damages clause could not meet either part of the two-part test for an

enforceable liquidated damages provision set out at the beginning of this paragraph

above. *Id.* The supreme court explained:

> [the liquidated damages clause] cannot meet the first prong of the test because the harm caused by the breach of the contract is not incapable or difficult of estimation. The provision assumes actual damages can and will be determined, indeed must be determined, before the prescribed multiplier can be applied. The provision cannot meet the second prong of the test because, instead of attempting to forecast actual damages, it calls for them to be determined and then multiplied.

*Id.*

> Here, the liquidated damage clause provides:

> [I]t is agreed that [VGC] will be substantially damaged by [Dr. Ozcelebi's] failure to remain at [VGC] in the practice of medicine for a period of twenty-four (24) months and that, considering the precise damages are difficult to calculate, [Dr. Ozcelebi] will agree to pay [VGC] the sum of two hundred and fifty thousand dollars ($250,000) for failure to fulfill [Dr. Ozcelebi's] two-year contract. In addition to liquidated damages, [VGC] will recover from [Dr. Ozcelebi], any other consequential damages, and reasonable attorney's fees, due to the failure to provide services to [VGC] for a period of twenty-four (24) months.

> Unlike *Phillips*, there is nothing facially penal about this liquidated damage clause.

Nothing establishes or presupposes that actual damage caused by Dr. Ozcelebi's breach

is capable of estimation; it states the opposite. *Cf. id.* Furthermore, nothing establishes

that $250,000 in liquidated damages is an unreasonable forecast of actual damages or

that actual damages are much lower than that amount. *Cf. id.* Nonetheless, Dr. Ozcelebi

argues $250,000 is unreasonable because the same amount is due regardless of whether

45

the breach occurs at the beginning, the middle, or the end of the two-year contract term. However, Dr. Ozcelebi provides no authority that a liquidated damage clause reasonably forecasts losses only if it assigns varying damage amounts tied to the duration of a contract term, and we find none. Instead, our research shows a party seeking to invalidate a liquidated damage clause as unreasonable should ordinarily show that the amount stipulated is disproportionate to actual damages. *See id.* at 788 (noting that a defendant may be required to prove what the actual damages were to show that a liquidated damages provision is unreasonable because the actual damages incurred were much less than the stipulated amount)*; Magill v. Watson*, 409 S.W.3d 673, 679 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (observing that "[i]f the amount stipulated in the liquidated damages clause is shown to be disproportionate to actual damages, we should declare that the clause is a penalty and limit recovery to actual damages"). Dr. Ozcelebi provides no evidence regarding actual damages but instead mounts a facial attack on the clause—the only kind of attack he can make considering the penalty defense was struck. Because Dr. Ozcelebi has not shown that the liquidated damage clause is facially invalid, he cannot take shelter under *Phillip*'s "narrow" exception to the general rule that the affirmative defense of penalty must be pleaded, or it is waived. *See id.*

Next, Dr. Ozcelebi argues the last sentence of the liquidated damages provision, which recites that VGC may also recover "consequential damage, and reasonable attorney's fees," invites additional liability beyond $250,000, rendering the entire provision invalid under two intermediate court cases—*Cole* and *Gray*. *See Robert G. Beneke & Co. v. Cole*, 550 S.W.2d 321 (Tex. Civ. App.—Dallas 1977, no writ) (holding that liquidated-damages provision, which fixed liquidated damages without excluding

46

additional liability for actual damages, failed to reasonably forecast just compensation and therefore constituted a penalty); *see also Nexstar Broad., Inc. v. Gray*, No. 09-07-364CV, 2008 WL 2521967, at *1 (Tex. App.—Beaumont June 26, 2008, no pet.) (mem. op.) (same). However, Dr. Ozcelebi fails to provide binding precedent from our Court to support his position, and we find none. Moreover, even if we were to assume that the provision constitutes a penalty under *Cole* and *Gray*, the breaching parties in those cases undisputedly pleaded the penalty defense to the trial court. Here, however, the trial court's special exceptions order struck Dr. Ozcelebi's penalty defense, and Dr. Ozcelebi makes no argument that a *Cole/Gray* challenge to a liquidated-damages provision falls under *Phillip*'s "narrow" exception to the general rule that the affirmative defense of penalty be pleaded, or it is waived. *See Phillips*, 820 S.W.2d at 790. Furthermore, Dr. Ozcelebi's construction of the contract would result in the forfeiture of an agreed-upon contractual term, which Texas courts abhor. *See Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 842 (Tex. 2010) ("Texas courts will not construe a contract to result in a forfeiture unless it cannot be construed in any other way"). With this guiding principle in mind, we do not interpret the final sentence of the provision to invite additional liability for actual damages beyond $250,000. Instead, as we read the contract, the later reference to "attorney's fees" qualifies the earlier reference to "consequential damages" such that only attorney's fees are recoverable as consequential damages in the event of a breach, which is customary and proper in a breach of contract action; Dr. Ozcelebi does not and cannot argue otherwise. Dr. Ozcelebi's construction of the contract would result in a forfeiture of $250,000 in liquidated damages that the contracting parties agreed upon

47

even though, as we just mentioned, the contract may be interpreted to avoid such forfeiture. *See id.*

Next, as we understand it, Dr. Ozcelebi asserts there is at least a fact issue regarding whether actions allegedly taken by Dr. Chowdary in assigning him to work outside a medically underserved area excused his contractual obligation to complete the three-year minimum contract-term. However, the contention that a party to a contract is excused from performance because of a prior breach by the other contracting party is an affirmative defense that must be affirmatively pleaded. *See Compass Bank v. MFP Fin. Services, Inc.*, 152 S.W.3d 844, 853 (Tex. App.—Dallas 2005, pet. denied). Because Dr. Ozcelebi did not plead this affirmative defense, it cannot provide a basis to reverse the trial court's decision. In any event, Dr. Ozcelebi cites *his* summary judgment evidence as the evidentiary source to raise a fact issue with respect to his claim that Dr. Chowdary prohibited him from working in a medically underserved area. We affirmed the trial court's order excluding that evidence in Part VII(A)(2) of this opinion. We will not revisit that issue.

Dr. Ozcelebi next asserts his obligation to complete the three-year minimum was excused because Dr. Chowdary fraudulently induced him to sign the Employment Agreement thinking he would be assigned to a medically underserved area as required for his J-1 visa waiver. However, the trial court's special exceptions order struck Dr. Ozcelebi's fraudulent inducement claim when it struck any claims relating to "illegality of governmental visa program(s) or illegality or unenforceability of any contract(s) regarding such programs or employment pursuant to such visa programs." We affirmed the special exceptions order in Part IV(D)(5) of this opinion. We will not revisit that issue. We

48

conclude the trial court's summary judgment as to breach of contract was proper under both the non-compete provision and the liquidated damages provision.

### b. Breach of Fiduciary Duty

The trial court granted summary judgment as to VGC's breach of fiduciary duty claim against Dr. Ozcelebi. By granting summary judgment, the trial court necessarily found that: (1) a fiduciary relationship existed between VGC and Dr. Ozcelebi; (2) Dr. Ozcelebi breached his fiduciary duty to VGC; and (3) either Dr. Ozcelebi benefited or VGC was harmed by the breach. See *Priddy v. Rawson*, 282 S.W.3d 588, 599 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

As previously mentioned, in 2013, the trial court carried the third element (damages) with the case, but the 2016 summary judgment failed to address it on remand after *Ozcelebi II*. Nevertheless, the 2016 summary judgment states that it disposes of "all remaining issues." Neither party disputes that the judgment is final for purposes of appeal. We understand the court's disposition of "all remaining issues" as amounting to a finding that Dr. Ozcelebi's breach of fiduciary duty either: (1) resulted in no damage; or (2) resulted in the same damage as that occasioned by the breach of contract, thereby preventing double recovery for breach of contract and breach of fiduciary duty. *See Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998) (holding that a plaintiff may not recover double damages for a single loss even if the defendant is liable under two separate theories of recovery); *Valley Nissan, Inc. v. Davila*, 133 S.W.3d 702, 714 (Tex. App.—Corpus Christi 2003, no pet.) ("We further recognize that had the jury awarded this same amount [for breach of contract] under a theory of negligence, the measure of damages could be the same"). VGC has not cross appealed

49

the summary judgment with respect to the issue of damages for breach of fiduciary duty; therefore, VGC cannot recover damages as to that claim. *See Nat'l Prop. Holdings, L.P. v. Westergren*, 453S.W.3d 419, 428 (Tex. 2015) ("[A]lthough [the] jury found in favor of Westergren on liability questions concerning common law and statutory fraud, [the] jury awarded no damages for either claim and Westergren did not appeal those findings. He therefore cannot recover damages on fraud claims."). Instead, only Dr. Ozcelebi has taken an appeal arguing summary judgment for breach of fiduciary duty was improper *as to liability only*. However, we consider the issue of liability to be immaterial to the outcome of this appeal because the trial court found no damage or no recoverable damage for breach of fiduciary duty. *See Garza v. San Antonio Light*, 531 S.W.2d 926, 929 (Tex. Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.) (observing that the jury's "none" answer on damages rendered liability issue immaterial). In other words, the net result of this appeal is the same regardless of whether Dr. Ozcelebi breached any fiduciary duty to VGC. Accordingly, we need not address Dr. Ozcelebi's challenge to the liability portion of the summary judgment with respect the breach of fiduciary duty.

### c. ERISA

In its summary judgment order, the trial court specifically found that "any claims [by Dr. Ozcelebi] relating to [the] alleged breach of or failure to provide an ERISA approved retirement plan are preempted." In other words, the trial court found, as a matter of law, that it lacked subject-matter jurisdiction because Dr. Ozcelebi's ERISA claim fell within the exclusive jurisdiction of the federal courts. Dr. Ozcelebi responds that the trial court's summary judgment rests on an erroneous construction of federal ERISA law. According to Dr. Ozcelebi, some ERISA claims are preempted by federal law and

50

others are not; and his claim was not. Dr. Ozcelebi is correct that not all ERISA claims are preempted; however, as we explain below, his was.

### (i)    *Applicable Law*

Section 1132(e) of the United States Code provides that federal district courts have exclusive jurisdiction over civil actions under ERISA *except* for those brought under section 1132(a)(1)(B). 29 U.S.C. § 1132(e) (West, Westlaw through 2017 1st C.S.). Section 1132(a)(1)(B) allows a beneficiary to bring an action (1) "to recover benefits due under the terms of his plan," (2) "to enforce his rights under the terms of the plan," or (3) "to clarify his rights to future benefits under the terms of the plan." *Id.* § 1132(a)(1)(B). Consequently, state courts and federal district courts share concurrent jurisdiction only over those actions brought under section 1132(a)(1)(B). *See id.* §1132(e).

In contrast, section 1132(c) imposes civil penalties on plan administrators who refuse to supply requested plan information by a certain deadline. *Id.* § 1132(c)(1). Specifically, section 1132(c)(1)(B) provides:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

*Id.*

A claim for section 1132(c)(1) penalties does not necessarily constitute a claim covered by section 1132(a)(1)(B) for purposes of determining whether state and federal courts share concurrent jurisdiction over such claim. *See Yates v. NYC Health & Hosps. Corp.*, 37 Misc. 3d 809, 950 N.Y.S.2d 841, 844 (Civ. Ct. 2012). Instead, a claim for

51

section 1132(c)(1) penalties would be filed only in federal court. *See id.*; *see also* 29 U.S.C. § 1132(e).

**(ii)** *Discussion*

In view of the foregoing, the question is whether Dr. Ozcelebi's ERISA claim constitutes a claim under section 1132(a)(1)(B); if it does, the trial court had jurisdiction to review the claim, making dismissal on preemption grounds improper. *See* 29 U.S.C. § 1132(e).

Here, Dr. Ozcelebi did not seek to recover benefits allegedly due under the terms of the plan, to enforce his rights under the plan, or to clarify his rights to future benefits under the terms of the plan. *See id.* § 1132(a)(1)(B). Instead, Dr. Ozcelebi's asked the trial court to impose statutory penalties based on VGC's refusal to provide information concerning an alleged profit sharing plan within thirty days of Dr. Ozcelebi's October 2 letter request. *See id.* § 1132(c)(1)(B). Therefore, Dr. Ozcelebi's ERISA claim revolves solely around the imposition of section 1132(c)(1) penalties and does not concern the recovery, enforcement, or clarification of benefits, rights, or terms of a plan pursuant to section 1132(a)(1)(B) that would allow for filing in state court. *See id.* § 1132(e). Accordingly, the trial court was correct to find that Dr. Ozcelebi's ERISA claim is preempted and must be brought in federal court. *See Yates,* 950 N.Y.S.2d at 844 (holding that federal district court, rather than state court, had exclusive jurisdiction under ERISA to impose section 1132(c)(1) penalties).

**d.      RICO**

Dr. Ozcelebi contends the trial court erred in dismissing his RICO claim because his summary judgment evidence supported the contention that Dr. Chowdary lied to

immigration authorities by falsely stating, as a prerequisite to obtaining the J-1 visa waiver, that Dr. Ozcelebi would be working in a medically underserved area when Dr. Chowdary had no intention of assigning Dr. Ozcelebi to work in such area. According to Dr. Ozcelebi, Dr. Chowdary's alleged lie to secure Dr. Ozcelebi's visa waiver constituted "racketeering activity" prohibited under federal law. *See* 18 U.S.C.A. § 1961(1) (West, Westlaw through 2017 1st C.S.) (providing that "racketeering activity" means "any act which is indictable under . . . section 1546 (relating to fraud and misuse of visas, permits, and other documents)"); *see id.* § 1546(a) (West, Westlaw through 2017 1st C.S.) (providing that "[w]hoever . . . falsely makes any immigrant or nonimmigrant visa . . . prescribed by statute or regulation . . . as evidence of authorized stay or employment in the United States . . . knowing it to . . . have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained . . . shall be fined or imprisoned [for a term of years depending on other circumstances attendant to such act]").

However, the trial court's special exceptions order struck claims relating to "illegality of governmental visa program(s) or illegality or unenforceability of any contract(s) regarding such programs or employment pursuant to such visa programs." We affirmed the special exceptions order in Part IV(D)(5) of this opinion. Dr. Ozcelebi does not dispute that his RICO claim falls within the ambit of the claims stricken by the special exceptions order. In any event, Dr. Ozcelebi points only to *his* summary judgment evidence to make a trial issue out of his RICO claim. We affirmed the trial court's order excluding that evidence in Part VII(A)(2) of this opinion. Therefore, we conclude summary judgment was proper as to Dr. Ozcelebi's RICO claim.

**B. 2016 Summary Judgment (No-Evidence)**

**1. No-Evidence Summary Judgment Standard of Review**

A party may move for summary judgment on grounds that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Timpte Inds., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). Once the motion is filed, the burden shifts to the non-movant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). If the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact, summary judgment is improper. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions," while less than a scintilla exists when the evidence is "so weak as to do no more than create mere surmise or suspicion." *Id.*; *Reynosa v. Huff*, 21 S.W.3d 510, 512 (Tex. App.—San Antonio 2000, no pet.). "When reviewing a no-evidence summary judgment, we 'review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.'" *Timpte Inds., Inc.*, 286 S.W.3d at 310.

**2. Counterclaims: Malicious Prosecution, Assault, and Invasion of Privacy**

By what we understand to be his seventh issue, Dr. Ozcelebi contends the trial court erred in granting Dr. Chowdary's no-evidence summary judgment as to his counterclaims for malicious prosecution, assault, and invasion of privacy. Specifically,

Dr. Ozcelebi argues the summary judgment evidence raised fact issues concerning those counterclaims, and therefore, the take-nothing summary judgment was improper. However, to raise a trial issue as to those claims, Dr. Ozcelebi points only to *his* summary judgment evidence, which the trial court excluded. We affirmed the order excluding that evidence in Part VII(A)(2) of this opinion. We will not revisit that issue.

Furthermore, we need not address Dr. Ozcelebi's summary judgment arguments because there is a separate ground on which to affirm that Dr. Ozcelebi does not challenge on appeal: the 2016 death penalty sanction described in Part II(K) of this opinion. An appellant must challenge every ground on which the trial court's judgment may be upheld. *See Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 83 (Tex. 1977) (observing that a judgment must be affirmed if appellant does not challenge each separate and independent ground); *see also Heritage Gulf Coast Props., Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 653 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Here, the trial court dismissed Dr. Ozcelebi's counterclaims as a death penalty sanction in 2016—separate and independent of its 2016 no-evidence summary judgment. Accordingly, we overrule Dr. Ozcelebi's seventh issue because (1) no admissible summary judgment evidence raises a fact issue as to those claims, and (2) the trial court's ruling may be upheld as a death penalty sanction, which Dr. Ozcelebi does not challenge on appeal.

### 3. Attorney's Fees for Contractual Liability

In addition to Dr. Ozcelebi's counterclaims, the 2016 summary judgment also determined attorney's fees with respect to Dr. Chowdary's contractual damages. The trial court specifically awarded $378,750 in favor of Dr. Chowdary and VGC using the lodestar

method.  Dr. Ozcelebi argues there is legally insufficient evidence to support this fee-award under the lodestar method.

### a.    Applicable Law

"The lodestar method aims to provide a relatively objective measure of attorney's fees."  *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762 (Tex. 2012).  The party applying for the attorney's fee award bears the burden of proof.  *Id.* at 561.  Under the lodestar method, the determination of what constitutes a reasonable attorney's fee involves two steps.  *Id.* at 560.  First, "the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work."  *Id.*  Second, the court "multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar."  *Id.*  The court may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case.  *See id.*

The court may also consider the following non-exclusive factors in making a lodestar determination:

1. the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

2. the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

3. the fee customarily charged in the locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by the client or by the circumstances;

6. the nature and length of the professional relationship with the client;

7. the experience, reputation, and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* at 561 (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b)).

The starting point for determining a lodestar fee award is the number of hours "reasonably expended on the litigation." *Id.* at 762. That proof should include the basic facts underlying the lodestar, which are: "(1) the nature of the work, (2) who performed the services and their rate, (3) approximately when the services were performed, and (4) the number of hours worked." *Id.* at 736. "[I]n all but the simplest cases, the attorney [should] refer to some type of record or documentation to provide this information." *Id.* Thus, when there is an expectation that the lodestar method will be used to calculate fees, "attorneys should document their time much as they would for their own clients, that is, contemporaneous billing records or other documentation recorded reasonably close to the time when the work is performed." *Id.* While such evidence would ordinarily be sufficient to substantiate attorney's fees, the Texas Supreme Court has never held that a lodestar fee can only be established through time records or billing statements. *See Long v. Griffin*, 442 S.W.3d 253, 256 (Tex. 2014); *City of Laredo v. Montano,* 414 S.W.3d 731, 736 (Tex. 2013).

### b. Standard of Review

The award of attorney's fees generally rests in the sound discretion of the trial court. *See El Apple*, 370 S.W.3d at 761. Reviewing courts "accord considerable deference to a trial court's findings regarding whether prevailing counsel's claimed hours are excessive, redundant, or unreasonable." *Id.* at 763–64. The reason for applying this

57

level of deference is that the trial court "possesses a superior understanding of the case and the factual matters involved." *Id*.

### c. Discussion

Dr. Ozcelebi argues the evidence offered by Dr. Chowdary's attorney to support attorney's fees "lacked sufficient descriptions regarding particular tasks and the amount of time expended on each task." According to Dr. Ozcelebi, the task and time-per-task descriptions were too "general and overbroad making it impossible . . . to determine whether the work was duplicative or excessive." We disagree.

Here, Dr. Chowdary's attorney prepared a detailed affidavit attesting to his extensive legal experience and to matters relating to the lodestar method. He stated that, in calculating the fee request, he considered the eight factors listed in the applicable law section above. He stated that his hourly fee is $250 per hour and that the other attorney retained by Dr. Chowdary charged the same rate. He also separately identified the number of hours worked and the services performed with respect to his work and that of the other attorney retained by Dr. Chowdary. Finally, he provided detailed timesheets documenting the various services performed, when they were performed, and how much time the work required.

According considerable deference to a trial court as we must, we conclude the detailed timesheet and affidavit submitted for the trial court's review provided sufficient information with which to perform a meaningful review of the lodestar fee request in this case. *See Long*, 442 S.W.3d at 256; *Montano*, 414 S.W.3d at 736; *El Apple*, 370 S.W.3d at 761. We overrule Dr. Ozcelebi's seventh issue.

### VIII.    2016 MEDIATION SANCTIONS

58

Dr. Ozcelebi's eighth issue relates to the court-ordered mediation in 2016, which Dr. Ozcelebi attended by himself after specifically directing his attorney to be absent. The trial court sanctioned Dr. Ozcelebi personally for disregarding its order requiring attendance at mediation by the parties *and* their respective attorneys.

Dr. Ozcelebi contends the evidence is not legally sufficient to support the sanction and argues the sanction goes "beyond [the court's] inherent power." However, anything more than a mere scintilla renders evidence of a vital fact legally sufficient. *See City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In *Kutch v. Del Mar Coll*, we recognized that courts possess inherent powers to sanction, stating:

> [A court's] [i]nherent power to sanction exists to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process, such as any significant interference with the traditional core functions of Texas courts.

831 S.W.2d 506, 510 (Tex. App.—Corpus Christi 1992, no writ). "Included within a trial court's core functions is the management of its docket and the issuance and enforcement of its orders." *In re K.A.R.*, 171 S.W.3d 705, 715 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (affirming a sanction against party and counsel for disregarding court-ordered mediation by unilaterally cancelling mediation without adequate notice); *Roberts v. Rose*, 37 S.W.3d 31, 33–35 (Tex. App.—San Antonio 2000, no pet.) (affirming a sanction against an attorney for failing to appear at a court-ordered mediation). For the court's inherent power to apply, "there must be some evidence and factual findings that the conduct complained of significantly interfered with the court's legitimate exercise of one of [its] powers." *Id.*

Here, the trial court heard evidence and found that Dr. Ozcelebi acted in bad faith when he instructed his attorney not to attend the mediation. Dr. Ozcelebi argues there

was no bad faith because he was not aware that the mediation order required his attorney to attend; instead, Dr. Ozcelebi testified his reason for instructing his attorney to be absent was to "save some money" on attorney's fees. However, the trial court was the sole judge of the credibility and weight of the evidence, and in conducting our legal sufficiency review, we will defer to the trial court regarding Dr. Ozbelebi's motives for absenting his attorney from the mediation. *See City of Keller*, 168 S.W.3d at 819 (stating that fact finders are the "sole judges of the credibility of the witnesses and the weight to give their testimony. They may choose to believe one witness and disbelieve another. Reviewing courts cannot impose their own opinions to the contrary."). The trial court's finding regarding bad-faith is supported by more than a scintilla of evidence, making the sanction proper within the court's inherent power. *See City of Keller*, 168 S.W.3d at 810; *see also In re K.A.R.*, 171 S.W.3d at 715; *Roberts*, 37 S.W.3d at 33–35.

Dr. Ozcelebi also argues the dollar amount of the sanction ($4,400) lacks legally sufficient evidence. Here, the trial court's order specifically apportioned the sanction to the following persons and entities in the following dollar amounts:

1. $1,000.00 awarded to VGC for lost income concerning procedures to have been performed by [Dr.] Chowdary on behalf of VGC.

2. $800.00 awarded to VGC for lost income concerning patient consultation fees.

3. $600.00 awarded to VGC and/or [Dr. Chowdary] for reimbursement of the mediation fee paid on behalf of plaintiffs regarding the June 2016 mediation.

4. $500.00 for attorney's fees payable to [the attorney for Dr. Chowdary and VGC] concerning attendance at the June, 2016 mediation.

5. $500.00 in attorney's fees payable to [the attorney for Dr. Chowdary and VGC] on behalf of plaintiffs concerning preparation of the Motion for Sanctions.

60

6. $1,000 in attorney's fees payable to [the attorney for Dr. Chowdary and VGC] concerning attendance at the hearing concerning the Motion for Sanctions regarding the mediation.

Both Dr. Chowdary and his attorney testified at the sanction hearing regarding these amounts. Dr. Chowdary also provided affidavit testimony regarding the loss of income to VGC because of his attendance at the mediation. We conclude this evidence constituted "more than a scintilla" to support the dollar amounts awarded above. *See id.* at 810. We overrule Dr. Ozcelebi's eight issue.

## IX.    ABSENCE OF FINDINGS

By his ninth issue, Dr. Ozcelebi's contends the trial court "erred in failing to file [] findings of fact and conclusions of law when [he] properly requested the same in accordance with the Texas Rules of Civil Procedure."

Other than listing this issue in the "Issues Presented" portion of his appellate brief, Dr. Ozcelebi provides no argument or legal authority. *See* TEX. R. APP. P. 38.1(i). The only citation to the record appears in Dr. Ozcelebi's reply brief, where he cites the pages of the clerk's record where he requested fact findings and past-due findings. However, Dr. Ozcelebi's reply brief provides no argument or explanation regarding whether the request for findings and past-due findings was timely made, whether the trial court would have been required to enter such findings in light of its various fact-laden judgments and orders, which orders or judgment lack sufficient findings, or whether the absence of additional fact findings, if required, hampers his ability to properly present his issues to this Court. *See Main Place Custom Homes, Inc. v. Honaker*, 192 S.W.3d 604, 612 (Tex. App.—Fort Worth 2006, pet. denied) (observing there is reversible error only if the absence of additional findings prevents a party from adequately presenting an argument

61

on appeal).  We conclude that Dr. Ozcelebi's ninth issue is inadequately briefed because he failed to meaningfully address these questions.  *See* TEX. R. APP. P. 38.1(i).

## X.   CONCLUSION

We affirm all the trial court's judgments and orders in this case.


**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice


Delivered and filed the
13th day of September, 2018.